EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nelly Santiago, por sí y como Madre con patria potestad de los niños Yadelis y Luis Barnecett Santiago<br><br>        Demandantes Peticionarios<br><br>                v.<br><br>    Estado Libre Asociado de Puerto Rico<br><br>        Demandado Recurrido | Certiorari<br><br>2004 TSPR 162<br><br>  162 DPR _____ |

Número del Caso: CC-1999-530

Fecha: 20 de octubre de 2004

Tribunal de Circuito de Apelaciones:

                    Circuito Regional de San Juan

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano, y los Jueces Aponte Jiménez y Giménez Muñoz

Abogados de la Parte Peticionaria:

                Lcdo. Pedro E. Ortiz Álvarez
                Lcdo. Luis A. Falto Cruz

Oficina del Procurador General:

                Lcda. Carmen A. Riera Cintrón
                Procuradora General Auxiliar


Materia: Apelación de Sentencia Sumaria del Tribunal Superior, Sala de San Juan


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nelly Santiago, por sí y como
Madre con patria potestad de
los niños Yadelis y Luis
Barnecett Santiago

    Demandantes Peticionarios

        v.                  CC-1999-530

Estado Libre Asociado de
Puerto Rico

    Demandado Recurrido

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 20 de octubre de 2004

Nos corresponde resolver si el Estado Libre Asociado de Puerto Rico goza de inmunidad por la omisión de un Registrador de la Propiedad quien, al inscribir una sentencia judicial en el libro de Registro de Sentencias del Registro de la Propiedad, omitió mencionar el nombre de uno de los co-demandados contra quien había recaído una sentencia en cobro de dinero. 30 L.P.R.A. secs. 1801 *et seq*.

Por entender que la calificación registral es una función *sui generis* que goza de atributos similares a la función judicial, y toda vez que la inscripción de una sentencia judicial en el

Registro de Sentencias es el último paso en el proceso discrecional de calificación registral, resolvemos que el Estado Libre Asociado goza de inmunidad, en virtud de lo dispuesto por el Art. 6(b) de la Ley Núm. 104 de 24 de junio de 1955, según enmendada, 32 L.P.R.A. sec. 3065 (b) *et seq.* (¨Ley Núm. 104¨).[1]

## I.

El 18 de noviembre de 1994, el Tribunal Superior, Sala de Caguas, dictó sentencia en cobro de dinero en el caso Luis Barnecett Torres y otros vs. Cruz Figueroa Delgado y otros, Civil Núm. EDC 90-0041. Mediante dicha sentencia, se condenó a la parte demandada, señor Figueroa Delgado, su esposa Marina Figueroa Hernández y la sociedad legal de gananciales compuesta por ambos, al pago de $72,000.00, más el interés legal al 8.5% desde que surgió la causa de acción y, $5,000.00 en concepto de honorario de abogados. Al momento de recaer la sentencia, el señor Barnecett Torres había fallecido; su viuda, la señora Nelly Santiago (la "peticionaria"), fue nombrada administradora judicial de la sucesión Barnecett.

---

[1] El Artículo 6 de la Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. sec 3081, según enmendada, enumera las circunstancias en que el Estado Libre Asociado de Puerto Rico no responde en daños y perjuicios por actos u omisiones negligentes de sus funcionarios o empleados. En su inciso (b), invocado en este caso como causa de exclusión de responsabilidad, se eximen las actuaciones: "en el desempeño de una función de carácter discrecional, aun cuando hubiere abuso de discreción."

Para asegurar la efectividad de la sentencia, la peticionaria procuró, el 10 de enero de 1995, una instancia en el Registro de la Propiedad, Primera Sección de Caguas, en la cual se solicitaba la anotación de la sentencia dictada contra el señor Figueroa Delgado y la señora Figueroa Hernández en el Registro de Sentencias. Posteriormente, el 7 de marzo de 1995, se presentó una Instancia Complementaria en la cual se identificaban las propiedades afectas por la sentencia de la siguiente manera:

> Las propiedades que se pretenden afectar con la anotación de la Sentencia Certificada que se acompaña son los solares A, donde enclava una estructura de vivienda, y el Solar B, con cabidas superficiales de ochocientos ochenta y dos metros cuadrados (882 m2) y seiscientos sesenta y ocho punto ochenta y cinco metros cuadrados (668.85m2) respectivamente, sitas en el Barrio Turabo del municipio de Caguas.
>
> Las mismas están inscritas al Folio 114, Tomo 839, Finca 27,859, Sección Primera, del Registro de la Propiedad de Caguas, Puerto Rico.

El 19 de abril de 1995, la sentencia fue inscrita en el Registro de Sentencias. Sin embargo, en la anotación no figuró el nombre de la señora Figueroa Hernández como co-demandada en el caso en cobro de dinero. La inscripción hecha en el Registro de Sentencias, identificaba a la parte demandada en el caso como el señor ¨Cruz Figueroa y otros.¨ Es decir, erróneamente no se incluyó el nombre de la señora Figueroa Hernández como co-deudora por sentencia.

Así las cosas, el 29 de diciembre de 1995, la señora Figueroa Hernández segregó el solar A, y procedió a su venta por la cantidad de $77,000.00.

El 7 de marzo de 1996, el Registrador de la Propiedad extendió una anotación al margen de la inscripción de la sentencia donde se hacía constar lo siguiente: ¨se aclara la instancia anotada a los efectos de hacer constar que la misma es en contra de don Cruz Figueroa Delgado y doña Marina Figueroa Hernández teniéndose a la vista documento que motivó la anotación.¨

Así las cosas, el 9 de diciembre de 1996, la peticionaria instó por sí y como administradora judicial de la sucesión Barnecett, una demanda en daños y perjuicios contra el Estado Libre Asociado. Alegó en su demanda que, como resultado de la negligencia de los funcionarios del Registro de la Propiedad se omitió el nombre de la señora Figueroa Hernández como co-deudora por sentencia en la inscripción efectuada en el libro de Registro de Sentencias. En virtud de lo cual, la señora Figueroa pudo vender el solar segregado sin que constara que éste estuviese afecto por el gravamen que supone la sentencia dictada. Ello a su vez impidió, según reclamó, que la peticionaria pudiese ejecutar dicha finca en pago de la sentencia dictada a su favor. Se solicitó en la demanda que se declarara con lugar la misma y se condenase al Estado Libre Asociado al pago de $77,000.00, suma ésta que representaba el dinero devengado por la

señora Figueroa Hernández como resultado de la venta de la finca en cuestión.

El 25 de enero de 1999, el Tribunal de Primera Instancia, Sala Superior de San Juan, dictó sentencia desestimando la demanda presentada. En su sentencia, el tribunal resolvió que la función calificadora de los Registradores de la Propiedad era una de naturaleza discrecional por lo que el Estado Libre Asociado no responde en virtud de lo dispuesto por el Art. 6(b) de la Ley Núm. 104, *supra*. Inconforme, la peticionaria acudió al Tribunal de Circuito de Apelaciones. El foro apelativo, bajo iguales fundamentos, confirmó la desestimación de la demandada instada.

El 14 de julio de 1999, se presentó el recurso de certiorari de epígrafe y el caso quedó sometido en marzo de 2000. En su escrito, la peticionaria levanta tres señalamientos de error, a saber:

> Erró el Tribunal de Circuito de Apelaciones al confirmar que los hechos que provocan este pleito se desarrollan bajo el palio de la función calificadora del Registrador de la Propiedad de Caguas.

> Erró el Honorable Tribunal de Circuito de Apelaciones al extender la inmunidad al Estado Libre Asociado de Puerto Rico por las actuaciones del Registrador de la Propiedad de Caguas.

> Erró el Tribunal de Circuito de Apelaciones al sostener que no se han ocasionado daños a la parte apelante y peticionaria, como resultado de la actuación negligente del Registrador de la Propiedad de Caguas.

Expedimos el recurso solicitado y contando con la comparecencia de las partes resolvemos.

## II.

En el caso ante nuestra consideración, el Registrador de la Propiedad, al inscribir la sentencia dictada contra el señor Cruz Figueroa Delgado y Mariana Figueroa Hernández en el Registro de Sentencias, omitió incluir el nombre de esta última como co-deudora por sentencia. Su omisión impidió que la propiedad de la señora Figueroa Hernández quedase afecta por el gravamen por sentencia. Dicho inmueble pudo ser vendido entonces libre de carga, en perjuicio de la peticionaria. La peticionaria nos arguye que ese hecho la privó de poder cobrar su acreencia del importe de la venta del inmueble lo que le causó un daño por el que el Estado debe responder.

La peticionaria nos solicita entonces que resolvamos que el acto de inscripción de un documento judicial, extendiendo el asiento correspondiente, no forma parte de la función calificadora del Registrador. Aduce la peticionaria que la inscripción de un asiento es un acto rutinario ajeno al ejercicio de la discreción que pudiera caracterizar el procedimiento de calificación registral. Siendo ello así, el Estado deberá responder civilmente por cualquier actuación u omisión negligente en que incurra un Registrador de la Propiedad cuando practica un

asiento, por cuanto no es de aplicación lo dispuesto por el Art. 6(b) de la Ley Núm. 104.

No le asiste la razón.

La controversia planteada requiere que analicemos lo siguiente, a saber: la naturaleza de la función calificadora del Registrador; el significado de la inscripción de un asiento; el alcance de una inscripción en el Registro de Sentencias. Por último, analizaremos el alcance de la inmunidad que goza el Estado en virtud de lo dispuesto por el Art. 6(b) de la Ley Núm. 104. Veamos entonces.

### i.

El Registro de la Propiedad es "el instrumento básico o esencial del Derecho inmobiliario registral." R. Roca Sastre, L. Roca-Sastre Muncunill, *Derecho Hipotecario*, Tomo I, 1997, pág. 1. Su fin primordial es dar seguridad a la propiedad inmueble y proteger el tráfico jurídico de la misma a través de la publicidad que éste brinda a la transferencia de bienes inmuebles y en el gravamen del dominio y de los derechos reales. *Loc. cit.*

El procedimiento registral es el proceso mediante el cual una persona pretende o solicita la práctica de la inscripción de un título en el Registro de la Propiedad. Este procedimiento se compone de una serie de actividades o actos jurídicamente regulados, a través de los cuales el Registrador realiza su función y los particulares

obtienen, o tratan de obtener, la constatación registral de sus titularidades inmobiliarias, con sus efectos jurídicos inherentes.

La calificación registral, a su vez, es la apreciación o examen que lleva a cabo el Registrador de los diversos aspectos de los instrumentos traídos a su atención para inscripción, los cuales somete a su juicio para decidir si el acto contenido en tales documentos puede tener acceso a los libros o, por el contrario, debe ser denegada la práctica del asiento. Como sabemos, el principio de legalidad que informa el sistema registral, requiere que los títulos que acceden al Registro sean, tanto en el aspecto material como formal, válidos, eficaces y susceptibles de publicidad.

Así, en *L. Dershowitz & Co., Inc. v. Registrador*, 105 D.P.R. 267, 273 (1976), indicamos que la ¨función calificadora del Registrador. . . [e]s función trascendente sin la cual no podría cumplirse el principio de legalidad que gobierna el sistema inmobiliario registral. La calificación es la facultad por excelencia del Registrador que al ejercitarla realiza el propósito de que el Registro encierre sólo actos válidos y derechos perfectos.¨ Véase, además, *R & G Premier Bank of Puerto Rico v. Registradora*, res. 5 de noviembre de 2002, 158 D.P.R. ___, 2002 JTS 152 (¨[l]a calificación registral constituye la piedra angular del principio de legalidad¨); *Narváez Cruz v. Registrador*, res. 4 de enero

de 2002, 156 D.P.R.___, 2002 JTS 7; *Gasolineras PR v. Registrador*, res. 15 de noviembre de 2001, 155 D.P.R. ___; 2001 JTS 161; *Western Federal Savings Bank v. Registrador*, 139 D.P.R. 328 (1995); *Alameda Tower Associates v. Muñoz Román*, 129 D.P.R. 698 (1992); *U.S.I. Properties Inc. V. Registrador*, 124 D.P.R. 448 (1989).

La calificación ha sido descrita por el tratadista Lacruz Berdejo de la siguiente manera: "Iniciado el procedimiento registral mediante la solicitud de inscripción y presentación del título, y verificado su asiento en el libro Diario, el Registrador realiza un *juicio lógico de análisis fáctico y subsunción jurídica*, que desemboca en su resolución, término del procedimiento: la práctica, denegación o suspensión del asiento solicitado." J. L. Lacruz Berdejo, *Lecciones de Derecho inmobiliario registral*, Zaragoza, 1957, citado en J. M. Chico y Ortiz, *Conceptos básicos y formularios registrales*, Marcial Pons, Madrid, 1987, pág. 31. (Énfasis en original).

El Registrador al calificar, emite un juicio de valor asentado sobre bases jurídicas, que le permite incorporar o no al Registro una nueva situación jurídica inmobiliaria. Es decir, su función es decisiva para configurar el derecho subjetivo civil. En ese sentido, al calificar se ejerce una función similar a la función judicial de adjudicar. Así, Lacruz Berdejo apunta: "Asimismo, la actuación del Registrador consiste en una

aplicación del Derecho —esencialmente, del Derecho privado— semejante a la del Juez, necesitada de igual o mayor especialización, en igual posición de independencia jerárquica y alienidad al asunto y hasta con la misma obligación de juzgar (aquí los efectos registrales)." J. L. Lacruz Berdejo, "Dictámenes sobre la naturaleza de la función registral y la figura del Registrador", *Rev. Crítica de Derecho Inmobiliario*, 1979, págs. 174-75. Cabe destacar además que en el ejercicio de su función calificadora, el Registrador goza de completa autonomía e independencia. J. González Martínez, ¨El principio de legalidad¨, *Rev. Crítica de Derecho Inmobiliario*, 1927, pág. 597 (¨Dentro de su respectivo campo, . . . , el Registrador y el Juez son autónomos y, en cierto modo soberanos. . . . ¨)

Podemos concluir entonces que, al calificar un documento el Registrador interpreta y aplica el Derecho al adecuar hechos jurídicos al Derecho objetivo, esa función es decisiva para la configuración de derechos subjetivos civiles, se ejerce con completa autonomía e independencia de criterio y requiere de cierto grado de especialización. Existe por tanto, un evidente entronque entre la jurisdicción registral y la actividad judicial. La función calificadora del Registrador goza entonces de atributos ínsitos a la función judicial. *R.F.C. Mortgage Co. v. Registrador*, 60 D.P.R. 235, 239 (1942) (El registrador es un ¨**oficial cuasi-judicial**. . . que rinde

importantes servicios profesionales que envuelven el ejercicio de su criterio al examinar y certificar la validez de documentos sobre títulos ya inscritos.¨) (Énfasis nuestro.) Ello ha de ser así, independientemente del documento que se califique. Es decir, poco importa, para efectos de su naturaleza y de las características que la singularizan, que el documento a calificar sea un documento notarial o judicial.

Adviértase sin embargo, que no estamos resolviendo que la función de calificar es, de suyo, ¨una función judicial.¨ La naturaleza no contenciosa del proceso registral impide tal conclusión. Roca Sastre, Roca-Sastre Muncunill, *op. cit*, Tomo IV, pág. 13. Lo que sostenemos es que la calificación goza de algunos atributos propios a la función judicial. Atributos que son, por cierto, medulares al ejercicio de ambas funciones, tanto la judicial como la de calificación registral.

De la misma forma que en *Dershowitz*, concluimos que el acto de calificar es uno de jurisdicción voluntaria, pero tiene ¨algunas funciones que la singularizan, una de las cuales es que la misma es ejercida por un funcionario administrativo, cual es el Registrador de la Propiedad¨; así también, singulariza a esta función alguno de los atributos propios de la función judicial.[2]

---

[2] No hay duda de que la función de calificar es una muy singular. La doctrina española ha oscilado a través de

## ii.

La peticionaria argumenta en la alternativa que, aun cuando concluyésemos que la función calificadora del Registrador de la Propiedad fuera de naturaleza judicial o cuasi-judicial, la inscripción de un asiento, en este caso de una sentencia, no es más que un trámite rutinario de naturaleza ministerial, por lo que no se puede invocar la exclusión de responsabilidad del Art. 6(b) de la Ley Núm. 104. Para la peticionaria, la inscripción es una etapa más en el proceso de calificación registral, por

---

los años al caracterizar la misma, por lo que no ha existido uniformidad de criterio sobre su esencia. Algunos comentaristas la describen como de naturaleza administrativa. L. Díez Picazo, A. Gullón, *Sistema de Derecho Civil*, Vol. III, Ed. Tecnos, Madrid, 1985, pág. 296. (¨[P]arece más acertada la opinión de quienes entienden que tanto el Registro en cuanto a servicio público, como los actos que en él se realizan poseen naturaleza administrativa.¨) Y otros postulan que la calificación registral es un acto de jurisdicción voluntaria. Roca Sastre, Roca-Sastre Muncunill, *Derecho Hipotecario,* Vol. IV, 1997, pág. 11. (¨La naturaleza calificadora del Registrador de la propiedad inmueble tiene la *naturaleza jurídica* propia de los *actos de jurisdicción voluntaria.* . . .¨) (Énfasis en original.)

Lo cierto es que es ésta una actividad que goza de atributos propios, *sui generis*, por lo que resulta difícil encasillarla rigurosamente en uno de los conceptos preestablecidos. Chico y Ortiz nos advierte sobre esta particularidad y señala, que la naturaleza de la calificación es ¨difícilmente encajable en las categorías de la función judicial, administrativa o de jurisdicción voluntaria [por lo que] ha sido recientemente considerada como **función diferente de todas las anteriores, sin perjuicio de que algunas de las notas que la adornan puedan ser aplicadas a las mismas.**¨ J. M. Chico y Ortiz, *Conceptos básicos y formularios registrales*, Marcial Pons, Madrid, 1987, pág. 247. (Énfasis nuestro.)

lo que puede desligarse por completo de la etapa que le precede, la de calificación.

Nuevamente, no le asiste la razón a la peticionaria. Veamos.

Calificado el documento, el Registrador procede, como ya señaláramos, a la inscripción del asiento solicitado, la suspensión del mismo si entiende que el título presentado contiene una falta subsanable, o su denegación, por falta insubsanable. Es entonces mediante la inscripción que ingresan las fincas al Registro, se publica la titularidad del dominio o propiedad en éste, y se contiene sucesivamente el historial registral jurídico de la finca y sus modificaciones, incluyendo posibles gravámenes. No cabe hablar entonces de la inscripción como un mero acto rutinario, sin mayores consecuencias, como nos invita a que resolvamos la peticionaria. Es claro, que la inscripción no es sino el asiento definitivo. A. López y López, V. Montes Penadés, *Derechos reales y Derecho inmobiliario registral*, 1994, pág. 849. ("La inscripción en sentido estricto es un asiento definitivo,. . .   que está destinado a dar publicidad a los títulos y derechos. . .[y] del mismo se derivan los efectos típicos de la publicidad registral. . . .")

La inscripción está por lo tanto, inexorablemente entrelazada al acto de calificar por lo que no es posible establecer distinciones que resultarían, a fin de

cuentas, artificiosas, entre una y otra en cuanto a las características propias a su naturaleza o esencia. El desdoblamiento que pretende la peticionaria es, a todas luces, improcedente. La inscripción es, en última instancia, lo que permite darle efectividad y eficacia al proceso de calificación.

**iii**.

Por otro lado, la Ley Hipotecaria y el Reglamento de la Propiedad le asignan al Registrador de la Propiedad una facultad limitada al calificar un documento judicial, en comparación a cuando el documento es notarial.[3] *R & G Premier Bank, supra.* Véase, además, *Narváez, supra; U.S.I. Properties, supra,* pág 466. El hecho que la facultad concedida en la calificación de estos documentos

---

[3] El Art. 64 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2267, dispone en lo pertinente:

> En cuanto a los documentos expedidos por la autoridad judicial, la calificación expresada se limitará: (1) a la jurisdicción y competencia del tribunal; a la naturaleza y efectos de la resolución dictada si ésta se produjo en el juicio correspondiente; y si se observaron en él los trámites y preceptos esenciales para su validez; (2) a las formalidades extrínsecas de los documentos presentados; y (3) a los antecedentes del Registro.

Por su parte, el Reglamento Hipotecario especifica que las ¨[d]eterminaciones judiciales respecto a los hechos y derechos que corresponden a las partes envueltas en un litigio a tenor con el Artículo 67 de la Ley (30 L.P.R.A. sec. 2270), no podrán ser objeto de calificación por el Registrador sin perjuicio a lo dispuesto en el Artículo 64 de la Ley (30 L.P.R.A. sec. 2267) tocante a los documentos expedidos por la autoridad judicial.¨ Reglamento Hipotecario, sec. 79.1.

sea limitada, no desvirtúa su naturaleza. El juicio de valor que lleva a cabo el Registrador cuando califica un documento judicial es el mismo que cuando el documento que tiene ante sí es uno notarial. No se justifica entonces diferencias entre unos y otros. Además, el efecto que tiene sobre un bien inmueble la inscripción de una sentencia en el Registro de Sentencias abona a nuestra determinación.

Inscrita una sentencia en el Registro de Sentencias, ésta se constituye en un gravamen sobre todo inmueble del demandado —deudor por sentencia— no exento de embargo radicado en el distrito y sobre todos los inmuebles que el demandado adquiera posteriormente en dicho distrito. 30 L.P.R.A. sec. 1806. *Crespo v. Tribunal Superior*, 83 D.P.R. 568 (1961); *Viñas v. Gandía & Cía*., 25 D.P.R. 800 (1917).

En *Hernández v. Medina*, 19 D.P.R. 88 (1913), sostuvimos, al interpretar el Artículo 6 de la Ley sobre gravámenes por sentencia de 1906 —correspondiente en la actualidad a la sección 1806 de la Ley Hipotecaria, 30 L.P.R.A. sec. 1806— y el Artículo 1824 del Código Civil, que dicha disposición crea un sistema, en cierto modo, de ¨gravámenes ocultos¨ contrario al sistema establecido generalmente por la Ley Hipotecaria que exige la especificación de los gravámenes en cada una de las fincas afectadas. *Hernández v. Medina, supra*, pág. 90.

Este gravamen no crea o constituye un interés o derecho de propiedad en los bienes así gravados; solamente da derecho a que se establezca un embargo sobre dichos bienes en exclusión de otros intereses adversos posteriores a la sentencia. El alcance de un gravamen por sentencia es el mismo que tiene la anotación preventiva hecha por embargo, secuestro o ejecución de sentencias en virtud de mandamiento judicial, en cuanto a créditos posteriores. *Crespo v. Tribunal Superior, supra,* pág. 572. Así pues, al quedar inscrita en el Registro una sentencia, ésta no tan solo se beneficia de la publicidad registral que el Registro provee, sino también, su inscripción constituye una especie de garantía de Registro, que según Roca-Sastre, la asemeja ¨a las antiguas hipotecas judiciales.¨ Roca Sastre, Roca-Sastre Muncunill, *op. cit.,* Vol. IV, págs. 295-96.

Aún cuando la inscripción de una sentencia no constituya un impedimento para enajenar la propiedad, su enajenación posterior será sin perjuicio del derecho de la persona a cuyo favor se haya hecho la anotación. Véase, Chico y Ortiz, *op. cit.,* pags.486-90. El gravamen por sentencia surte efecto, claro está, sólo si la misma está debidamente inscrita en el Registro de Sentencias y pasada a su índice alfabético. 30 L.P.R.A. sec. 1804. *Hernández, supra.*

Como vemos, la inscripción en el Registro de una sentencia en cobro de dinero tiene serias consecuencias

sobre los inmuebles propiedad del deudor por sentencia. No cabe hablar entonces de actos rutinarios u ordinarios como nos invita la peticionaria.

### III.

Como indicáramos, la peticionaria arguye que toda vez que la calificación es una actividad distinta a la función judicial y que la inscripción es a su vez distinta y separada de la calificación así como de la función judicial, no aplica al caso ante nos lo dispuesto en el Art. 6(b) de la Ley 104. Ya vimos cómo la calificación registral es una actividad singular que goza de atributos propios a la función judicial y vimos también como la calificación e inscripción se inter relacionan de forma tal, que no debemos desdoblarlas para concluir que una goza de unas características y la otra no. A la luz de tales conclusiones, debemos entonces determinar si aplica o no lo dispuesto por el Art. 6(b) de la Ley Núm. 104 al caso de autos. Concluimos en la afirmativa.

A tenor con la Ley Núm. 104 el Estado renunció a su inmunidad y consintió a ser demandado en daños y perjuicios causados por las actuaciones y omisiones culposas y negligentes de sus agentes o empleados, en el descargo de sus funciones oficiales. *Valle Izquierdo v. E.L.A.*, res. 14 de mayo de 2002, 156 D.P.R.___, 2002 JTS 70; *Leyva v. Aristud*, 132 D.P.R. 28 (1993). El Art. 6(b) de la ley excluye del ámbito de la misma las actuaciones

de carácter discrecional.  Exclusión que se conoce  como "función discrecional."  La ley sin embargo no define qué es o en qué consiste una acción discrecional.

En *Piñeiro v. Manzano*, 102 D.P.R. 795 (1974), delineamos los contornos de la referida exclusión de responsabilidad.  Allí reconocimos que el concepto "función discrecional" es muy amplio por lo que no podíamos atenernos a su significado literal. *Piñeiro*, 102 D.P.R. pág. 798.  Reconocimos que en la aplicación de esta exclusión de responsabilidad debemos atenernos al ¨método casuístico¨, por lo que las determinaciones sobre su aplicabilidad se harán caso a caso.  102 D.P.R., pág. 799.  No empece lo anterior, en *Piñeiro* concluimos categóricamente que hay unas categorías de funciones discrecionales ¨que tradicionalmente han sido protegidas por el manto de inmunidad.¨ 102 D.P.R., pág. 800.  Así pues sostuvimos:  ¨No se disputa la inmunidad, por ejemplo, a las funciones de reglamentación del Estado, **a las funciones adjudicativas**, legislativas y **a las cuasi judiciales**.¨ *Loc. cit.*  (Énfasis nuestro.)

A la luz de lo anterior, es evidente que el legislador, al eximir al Estado de responsabilidad en daños por actuaciones de naturaleza discrecional de sus empleados o funcionarios, tuvo en mente actuaciones de carácter judicial o cuasi judicial.  Habida cuenta de que hemos resuelto que la calificación registral es una función *sui generis*, que participa en gran medida de

características análogas a las del juez y a las funciones
que éste desempeña, y que la inscripción de un asiento
está ineludiblemente entrelazada a la función de
calificar, forzoso es concluir que cualquier acto
negligente o culposo de un Registrador de la Propiedad,
en la inscripción de un asiento, no genera
responsabilidad al Estado en virtud del Art. 6(b) de la
Ley 104.[4]

**IV.**

En su tercer señalamiento de error, la peticionaria
nos indica que el Tribunal de Apelaciones erró al
sostener que no se han ocasionado daños como resultado de
la omisión del Registrador.  A la luz del resultado que

---

[4]   La Ley Núm. 145, de 22 de diciembre de 1994, 30
L.P.R.A. sec. 2054, dispone lo siguiente:

> "Los Registradores de la Propiedad gozarán
> con respecto a su responsabilidad civil, por las
> actuaciones en el desempeño de su cargo, de las
> mismas inmunidades que los jueces, sin perjuicio
> de la responsabilidad que pueda corresponder al
> Estado."

La exposición de motivos de la ley, al explicar la
razón de ser de dicha inmunidad, invoca la similitud que
existe entre las funciones de un registrador con las del
juez.  Específicamente se indica:  "se les exige por ley
actuar con la misma independencia de criterios que los
miembros de la judicatura... por lo que siempre han
merecido mantener para el desempeño de su función las
mismas libertades y garantías que los jueces."

Conforme hemos resuelto, el Estado no responde por
actuaciones negligentes de un Registrador, en el
desempeño de sus funciones, cuando las mismas se asemejan
a la función judicial como lo es el caso de la
calificación registral y la correspondiente inscripción.

hemos llegado es innecesario expresarnos sobre este señalamiento de error.

En mérito de la anterior, se confirma la sentencia recurrida.

Se dictará sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Nelly Santiago, por si como
Madre con patria potestad de
los niños Yadelis y Luis
Barnecett Santiago

    Demandante Peticionarios

                         CC-1999-530

       v.

Estado Libre Asociado de
Puerto Rico

    Demandados Recurridos


SENTENCIA


San Juan, Puerto Rico, a 20 de octubre de 2004


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se confirma la sentencia recurrida.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río disiente con opinión escrita a la cual se unen los Jueces Asociados señores Rebollo López y Rivera Pérez.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nelly Santiago, por sí y
como madre con patria potestad
de los niños Yadelis y
Luis Barnecett Santiago,
herederos de Luis Barnecett

    Demandantes-Peticionarios

                                  CC-1999-530   Certiorari

       v.

Estado Libre Asociado de
de Puerto Rico

    Demandados-Recurridos

Opinión Disidente emitida por el Juez Asociado señor CORRADA DEL RÍO a la cual se unen los Jueces Asociados señores Rebollo López y Rivera Pérez

San Juan, Puerto Rico a 20 de octubre de 2004.

Nos corresponde resolver si el Estado Libre Asociado de Puerto Rico goza de inmunidad por la actuación negligente de un Registrador de la Propiedad al omitir anotar una sentencia judicial, previamente calificada, contra un co-demandado adversamente afectado por ésta.

Por entender que el *acto de inscripción* de un documento en el Registro de la Propiedad, *luego de calificarse* favorablemente, es una función rutinaria no-discrecional del Registrador, resolveríamos en la negativa. Al no resolverlo así la Opinión mayoritaria emitida por el Tribunal, disentimos.

I

El 18 de noviembre de 1974, el entonces Tribunal Superior de Puerto Rico, Sala Superior de Caguas, dictó sentencia en cobro de dinero en el caso *Luis Barnecett Torres y otros v. Cruz Figueroa y Otros*, Civil Núm. ECD90-0041, y condenó al Sr. Cruz Figueroa, a su esposa Marina Figueroa, y a la Sociedad de Gananciales compuesta por ambos, a satisfacer a la parte demandante la suma principal de $72,000, además de $5,000 por honorarios de abogados y el interés legal de 8.5% desde que surgió la causa de acción. Al momento de emitirse la sentencia, el demandante Sr. Luis Barnecett Torres había fallecido, por lo que su viuda, la Sra. Nelly Santiago (en adelante, "la peticionaria") fue la persona autorizada a recibir el pago adeudado.[5]

Con el propósito de asegurar la efectividad de la sentencia dictada a su favor, el 14 de marzo de 1995, la peticionaria presentó una Instancia ante el Registro de la Propiedad, Sección Primera de Caguas (en adelante, "Registro de la Propiedad"), solicitando su anotación en el Registro de Sentencias. En dicha Instancia adujo que:

> [l]as propiedades que se pretenden afectar con la anotación de la Sentencia Certificada que se acompaña son los solares A [sic], donde enclava una estructura de vivienda, y el Solar B, con cabidas superficiales de ochocientos ochenta y dos metros

---

[5] Surge de autos que la peticionaria fue nombrada administradora judicial de los bienes del finado. *Véase* Apéndice, a la pág.9

cuadrados (882 m2) y seiscientos sesenta y ocho punto ochenta y cinco metros cuadrados (668.85 m2) respectivamente, sitas en el Barrio Turabo del municipio de Caguas.[6]

La sentencia fue anotada en el Registro de Sentencias el 19 de abril de 1995, pero sólo se hizo constar como deudor al Sr. Cruz Figueroa, obviándose incluir a su esposa, la Sra. Marina Figueroa.

Así las cosas, el 29 de diciembre de 1995, la Sra. Marina Figueroa vendió por $77,000 el Solar A, el cual constaba inscrito a su nombre. **En el momento de la venta no se advertía en el Registro de la Propiedad sobre el gravamen que pendía sobre el inmueble**. *Veáse* Apéndice, a la pág. 98.

Posteriormente, el 7 de marzo de 1996, el Registrador extendió la siguiente anotación al margen de la inscripción de la Sentencia: "[s]e aclara la instancia anotada a los efectos de hacer constar que la misma es en contra de don Cruz Figueroa Delgado **y** doña Marina Figueroa Hernández teniéndose a la vista el documento que motivó la anotación." *Véase* Apéndice, a la pág. 74 (énfasis suplido).

Por los hechos antes expuestos, la peticionaria—por sí y como administradora judicial de la sucesión Barnecett— presentó una acción en daños y perjuicios contra el Estado Libre Asociado de Puerto Rico (en

---

[6] *Véase* Apéndice, a la pág. 68.

adelante, "E.L.A.").[7]   Alegó que si al momento de la venta del Solar A, la sentencia del 18 de noviembre de 1974 hubiese estado inscrita contra la Sra. Marina Figueroa, ella (la peticionaria) hubiese podido ejecutar y obtener la suma de $77,000 en pago de la sentencia que obraba a su favor. Adujo, además, que la ausencia de inscripción oportuna de la sentencia contra la Sra. Marina Figueroa obedeció a la negligencia de los empleados del Registro de la Propiedad.

Tras varios trámites procesales, la peticionaria presentó una moción de sentencia sumaria en la cual señaló que no existía controversia de hechos por tratarse de la falta de inscripción de una sentencia. El E.L.A. se opuso a la referida moción y solicitó sentencia sumaria a su favor. Alegó, en esencia, que la función calificadora del Registrador de la Propiedad es una función cuasi-judicial de carácter discrecional, por lo que el Estado goza de inmunidad frente a una reclamación de daños y perjuicios.

Mediante sentencia de 25 de enero de 1999, el Tribunal de Primera Instancia (en adelante, "TPI") extendió inmunidad al E.L.A. y desestimó sumariamente la demanda. Dicho foro fundamentó lo resuelto en que la función calificadora de los Registradores de la Propiedad constituye una función discrecional de carácter cuasi-judicial, por lo que el Estado goza de inmunidad.

---

[7] *Véase* Apéndice, a la pág. 56.

Inconforme, la peticionaria acudió al Tribunal de Circuito de Apelaciones (en adelante, "TCA") aduciendo que erró el foro primario al resolver que las actuaciones imputadas al Registrador de la Propiedad se daban dentro de la función calificadora de éste.  La peticionaria argumentó, por el contrario, que el caso de marras trata sobre una acción negligente al inscribir una anotación de sentencia, dejando fuera a una de las partes demandadas.

El 12 de mayo de 1999, el TCA confirmó la sentencia apelada.  Dicho foro sostuvo que la capacidad en la que actúan los Registradores de la Propiedad en el desempeño de sus funciones es una cuasi-judicial de carácter discrecional, *y que independientemente de que se trate de una función calificadora*, el Estado, su empleador, goza de inmunidad.  De este modo, el TCA interpretó ampliamente el principio de inmunidad estatal con respecto a la responsabilidad del E.L.A. por las actuaciones del Registrador de la Propiedad.

De la denegatoria del TCA a reconsiderar su dictamen, la peticionaria recurrió ante nos planteando los siguientes señalamientos de error[8]:

> **1.  Erró el Tribunal de Circuito de Apelaciones al confirmar que los hechos**

---

[8] El archivo en autos de la copia de la notificación de la sentencia ocurrió el 20 de mayo de 1999. La peticionaria presentó moción de reconsideración el 4 de junio de 1999, la cual fue denegada mediante Resolución del 14 de junio de 1999. Copia de la notificación de esta resolución fue archivada en autos el 24 de junio de 1999.  El presente recurso fue radicado oportunamente ante este Tribunal el 14 de julio de 1999.

**que provocan este pleito se desarrollan bajo el palio de la función calificadora del Registrador de la Propiedad de Caguas.**

2. **Erró el Honorable Tribunal de Circuito de Apelaciones al extender la inmunidad del Registrador de la Propiedad de Caguas al Estado Libre Asociado de Puerto Rico.**

3. **Erró el Tribunal de Circuito de Apelaciones al sostener que no se han ocasionado daños a la parte apelante y peticionaria, como resultado de la actuación negligente del Registrador de la Propiedad de Caguas.**

El 15 de octubre de 1999, expedimos el recurso solicitado. Contando con la comparecencia de las partes, resolveríamos como sigue.

II

En su primer señalamiento de error, la peticionaria nos insta a considerar si los hechos que provocaron este pleito se desarrollaron bajo el palio de la función calificadora del Registrador de la Propiedad. La peticionaria argumenta en la negativa, estableciendo una dicotomía entre la función discrecional de calificar un documento y el acto rutinario de inscribirlo una vez calificado. Tiene razón la peticionaria. Veamos.

En nuestro ordenamiento, el procedimiento de inscripción registral está compuesto por una **_serie concatenada de actos_**, a saber: la petición de inscripción, la presentación de documentos, la calificación y la extensión del asiento. _Véase_ Luis R. Rivera Rivera, _Derecho Registral Inmobiliario Puertorriqueño_, 2da Ed., a la pág. 241 (2002); Lacruz y

Sancho, *Elementos del Derecho Civil*, III bis, Ed. 2da, Bosch, a la pág. 106 (1984).

Asimismo, la inscripción registral en Puerto Rico es de naturaleza voluntaria, salvo contadas excepciones en la Ley Hipotecaria o en su Reglamento.[9] Por tanto, el procedimiento registral requiere de un estímulo externo al registro para que se inicie, el cual se verifica con la petición de inscripción y la presentación de los documentos correspondientes. Luis R. Rivera Rivera, *supra*, a la pág. 242.

Roca-Sastre Muncunill, en su obra *Derecho Hipotecario*[10], señala que "[l]a petición de inscripción es la declaración de voluntad, unilateral y recepticia, emanada de las personas determinadas por ley, en solicitud al Registrador de que se proceda a practicar el asiento registral que corresponda a la índole del título registrable y que mediante la presentación de éste al Registro da comienzo al procedimiento registral" (énfasis omitido).

Así pues, la solicitud de inscripción impone al Registrador la necesidad de proceder a la extensión del

---

[9] El principio de rogación es la característica que tiene un sistema registral de exigir que el Registrador actúe solamente a pedido de parte y que, salvo las contadas excepciones dispuestas en la Ley o el Reglamento, no pueda actuar *motu proprio* o de oficio. Luis R. Rivera Rivera, *supra*, a la pág. 242.

[10] Ramón María Roca-Sastre y Luis Roca-Sastre Muncunill, *Derecho Hipotecario*, Tomo I, Ed. 8va, Bosch, Barcelona, 1995, pág. 489.

asiento de presentación correspondiente, que seguido de la obligada calificación del Registrador del título presentado, termina normalmente con la realización del asiento solicitado. Roca-Sastre Muncunill, *supra*, Tomo I, pág. 498.

Sobre la función calificadora del Registrador, hemos expresado que la misma instrumenta el principio hipotecario de legalidad, el cual a su vez persigue que sólo aquellos títulos válidos y perfectos logren acceso al Registro. *Narváez v. Registrador*, res. el 4 de enero de 2002, 156 D.P.R. ___ (2002), 2002 T.S.P.R. 1, 2002 J.T.S. 7; *Gasolineras Puerto Rico v. Registrador*, res. el 15 de noviembre de 2001, 155 D.P.R. ___ (2001), 2001 T.S.P.R. 158, 2001 J.T.S. 161; *Western Federal Savings Bank v. Registrador*, 139 D.P.R. 328 (1995); *Alameda Tower Associates v. Muñoz Román*, 129 D.P.R. 698 (1992); *Kogan v. Registrador*, 125 D.P.R. 636 (1990); *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448 (1989); *P.R. Prod. Credit Assoc. v. Registrador*, 123 D.P.R. 231 (1989); Luis R. Rivera Rivera, *supra*, a la pág. 268.

La amplitud de la facultad del Registrador para calificar ***documentos expedidos por la autoridad judicial*** está limitada por el Artículo 64 de la Ley Hipotecaria, 30 L.P.R.A. § 2267. El referido artículo dispone que la calificación de dichos documentos se circunscribirá a evaluar: 1) la jurisdicción y competencia del tribunal; la naturaleza y efectos de la resolución dictada si ésta

se produjo en el juicio correspondiente; y si se observaron en él los trámites y preceptos esenciales para su validez; 2) las formalidades extrínsecas de los documentos presentados; y 3) los antecedentes del Registro. *Véase además R & G Premier Bank of Puerto Rico v. Registradora*, res. el 5 de noviembre de 2002, 158 D.P.R. ___ (2002), 2002 T.S.P.R. 143, 2002 J.T.S. 152. Asimismo, el Reglamento Hipotecario especifica que:

> [l]as determinaciones judiciales respecto a los hechos y derechos que corresponden a las partes envueltas en un litigio a tenor con el Artículo 67 de la Ley (30 L.P.R.A. § 2270) no podrán ser objeto de calificación por el Registrador sin perjuicio a lo dispuesto en el Artículo 64 de la Ley (30 L.P.R.A. § 2267) tocante a los documentos expedidos por autoridad judicial. Reglamento Hipotecario, § 79.1.

A base de lo anterior, **hemos resuelto que al calificar documentos judiciales, la Ley Hipotecaria le asigna al Registrador una facultad limitada.** *R & G Premier Bank of Puerto Rico v. Registradora*, *supra*, a la pág. 6; *P.R. Credit Association v. Registrador*, 123 D.P.R. 231 (1989). Igualmente, hemos establecido que cuando el negocio a ser inscrito está sancionado por un tribunal de justicia, debe prevalecer la presunción de validez de la sentencia. *U.S.I. Properties v. Registrador*, *supra*.

Según la normativa expuesta, la calificación en su sentido amplio está limitada a extender, denegar o suspender la inscripción, anotación, nota o cancelación

solicitada. *Cabassa v. Registrador*, 116 D.P.R. 861 (1986). En esa etapa del proceso de inscripción, el Registrador ciertamente goza de discreción para determinar si el documento presentado puede tener acceso al Registro, aunque ésta es más limitada cuando califica una sentencia judicial. Ahora bien, el Artículo 52 de la Ley Hipotecaria, 30 L.P.R.A. § 2255, no habla en términos discrecionales al ordenar al Registrador a inscribir un título calificado favorablemente. Dicho artículo expresa, en su parte pertinente, que:

> **[s]e registrarán** los documentos dentro de los sesenta (60) días siguientes a su presentación o de corregidas las faltas que se hayan señalado, o de radicado el Escrito de Recalificación, salvo justa causa que fuere debidamente justificada y admitida por el Director.[11]
>
> ....(énfasis suplido)

Roca-Sastre Muncunill sostiene un criterio similar, al explicar que una vez realizada favorablemente una calificación, los efectos de la misma serán los siguientes:

> A) Si la calificación del Registrador es **favorable** a la extensión del asiento solicitado, los efectos inmediatos derivados de esta calificación serán los siguientes:
>
> a) El Registrador **dispondrá la extensión o práctica del asiento** solicitado, dentro del plazo de

---

[11] La salvaguarda de "justa causa" se refiere al término para inscribir el documento, que puede ser extendido más allá de los sesenta (60) días dispuesto por la Ley si se verifican ciertas condiciones. *Véase* Luis R. Rivera Rivera, *supra*, a la pág. 281.

vigencia del asiento de presentación **y lo autorizará con su firma.** Roca-Sastre Muncunill, *supra*, Tomo IV, a la pág. 55 (énfasis en el original).

**Por ende, tanto de la ley como de la doctrina surge que, habiéndose calificado favorablemente un documento, <u>el paso próximo y mandatorio</u> es la inscripción del asiento, nota marginal, o anotación. Es decir, las fuentes citadas no confieren discreción al Registrador para inscribir un documento calificado de manera favorable, sino que ordenan su inscripción.**

En suma, concluimos que la calificación y la inscripción de determinado documento, son etapas distintas, pero encadenadas, de un solo proceso. A pesar de que tanto la calificación del documento como el acto de inscripción son pasos obligatorios para el Registrador dentro del proceso amplio de inscripción, cada etapa tiene sus particularidades y limitaciones. La diferencia fundamental entre ambas gestiones radica en que si bien el Registrador goza de discreción[12] al realizar su función calificadora—aunque muy limitada cuando lo que se examina es un documento judicial— una vez éste califica

---

[12] El término "discreción" se define como "[s]ensatez para formar juicio y tacto". Mientras que*, **la voz "discrecional" se refiere a "la potestad gubernativa en la funciones de su competencia que no están regladas."** *Véase* Diccionario de la Lengua Española, Real Academia Española, Vigésima Primera Edición, Espasa-Calpe, Tomo a-g, a la pág. 759.

Se desprende pues, que si determinada función no permite el ejercicio de un criterio distinto al reglamentado, no cabe hablar de un acto discrecional.

favorablemente carece de discreción para decidir si inscribe o no el documento solicitado. En consecuencia, resolveríamos que el acto de inscribir un asiento en el Registro, una vez éste es calificado favorablemente, no es un ejercicio discrecional del Registrador.

Erró el TCA al confirmar que el omitir extender una inscripción en el Registro se suscitó dentro de las funciones calificadoras del Registrador. La omisión del Registrador en el caso de marras tuvo lugar en la etapa de extender la inscripción al documento presentado, luego de haberse calificado favorablemente. Si bien ambas funciones están eslabonadas dentro del proceso de inscripción registral, se trata de etapas distintas de dicho procedimiento, prescribiendo la ley facultades y limitaciones diferentes para cada una.

## III

En su segundo señalamiento de error, la peticionaria apunta a que el TCA erró al extenderle inmunidad al E.L.A. bajo el fundamento de que la capacidad en la que actúan los Registradores de la Propiedad es una cuasi-judicial de carácter discrecional. Tiene razón la peticionaria.

El Art.10 de la Ley Hipotecaria de 1979, según enmendada, 30 L.P.R.A. § 2054, establece en cuanto a la responsabilidad de los Registradores que:

> [l]a responsabilidad de los Registradores por las actuaciones en el desempeño de su cargo se regirá por las

disposiciones vigentes relativas a los demás funcionarios públicos.

> *Los Registradores de la Propiedad gozarán con respecto a su responsabilidad civil, por las actuaciones en el desempeño de su cargo, de las mismas inmunidades que los jueces, <u>sin perjuicio de la responsabilidad que pueda corresponder al Estado</u>* (énfasis suplido).

A base de la citada disposición, es patentemente claro que el Registrador goza de inmunidad en su *carácter personal* por la responsabilidad civil que pueda generar su conducta en el desempeño de sus deberes oficiales. *Cf. Feliciano Rosado v. Matos, Jr.* 110 D.P.R. 550 (1981).[13] Ahora bien, esta inmunidad personal es separada y distinta de la que pueda corresponderle al Estado por la actuación de éstos. *Véase Romero Arroyo v. E.L.A.*, 127 D.P.R. 724, 745 (1991).[14] Es precisamente la inmunidad del soberano— que surge de la Ley Núm. 104 de 29 de junio

---

[13] *Véase además* Opinión del Secretario de Justicia Número 31 de 1986.

[14] En *Romero Arroyo v. E.L.A.*, *supra*, a la pág. 745, este Tribunal diferenció la inmunidad de un funcionario público en relación con la responsabilidad civil que pueda generar su conducta en el desempeño de sus funciones oficiales, de la inmunidad del Estado. Expresamos en esa ocasión que, mientras la doctrina de inmunidad del Estado opera como una limitación de responsabilidad civil respecto a la entidad gubernamental como cuerpo político, las normas de inmunidad condicionada de los funcionarios públicos operan como una limitación de responsabilidad civil personal de dichos funcionarios. *Por ello, la concesión de inmunidad personal a un funcionario público no tiene efecto alguno sobre la renuncia del Estado a su inmunidad contra demandas por los daños que ocasionen los actos culposos y negligentes de sus empleados* (énfasis en el original).

de 1955, 32 L.P.R.A. § 3065 *et seq.*— la aducida por el Procurador General en representación del E.L.A. Veamos.

Conceptualmente, la doctrina de inmunidad soberana impide que el Estado pueda ser demandado a menos que éste consienta a ello y, como regla general, pregona que el Estado no es responsable por los daños que ocasionen sus funcionarios, agentes o empleados. *Defendini v. E.L.A.*, 134 D.P.R. 28 (1993).

No obstante, a través de la Ley Núm. 104, *supra*, el E.L.A. renunció condicionadamente a esta inmunidad en casos de daños y perjuicios a la propiedad o a la persona causados por funcionarios o empleados públicos—u otra persona actuando con capacidad oficial— dentro del marco de sus funciones, cargo o empleo, interviniendo culpa o negligencia. 32 L.P.R.A. § 3077 (a); *García v. E.L.A.*, 146 D.P.R. 725 (1998); *Sánchez Soto v. E.L.A.*, 128 D.P.R. 497 (1991). Es decir, mediante esta ley se puede demandar al E.L.A. cuando un funcionario o empleado público actúa negligentemente ***u omite actuar según su deber dentro del marco de las funciones propias de su cargo o empleo***. *García v. E.L.A.*, *supra,* a las págs. 734-735 (énfasis suplido).

Sobre las excepciones a esta renuncia de inmunidad estatal, el Art. 6 de la referida Ley Núm. 104, 32 L.P.R.A. 3081, manifiesta:

> Nada en las secs. 3077 *et seq.* de este título autoriza las acciones de daños y perjuicios

contra el Estado por un acto u omisión de un funcionario, agente o empleado:

(a) En el cumplimiento de una ley o reglamento, aun cuando éstos resultaren nulos;

(b) **en el desempeño de una función de carácter discrecional,** aun cuando hubiere abuso de discreción;
...″ (énfasis suplido).

Esta segunda limitación, sin embargo, merece ser apartada de nuestra consideración habida cuenta de que concluimos en la sección precedente que el acto de inscribir un documento previamente calificado de manera favorable no es uno que involucre la discreción del Registrador.  Como expresáramos en el acápite anterior, una vez calificado favorablemente un documento lo que procede es el **trámite rutinario**[15] de inscribirlo; esto es, el Registrador carece de discreción para inscribir un documento que conforme a derecho procede ser inscrito.

Ciertamente, la omisión del Registrador de la Propiedad de anotar la sentencia en controversia contra todas las personas sobre las que ésta pesaba fue una negligente que puso en peligro los intereses que un tribunal de justicia adjudicó a favor de la parte peticionaria.  Reconociendo la importancia que ostenta en

---

[15] Adviértase, además, que al interpretar el citado Art. 6 de la Ley Núm. 104, *supra*, resolvimos en *Piñeiro Manzano v. E.L.A.*, *supra*, a la pág. 800, que **aun en el ejercicio de funciones discrecionales**, si la gestión es una rutinaria que en nada afecta los programas de gobierno o normas básicas de política pública, no debe haber dificultad en reconocer la responsabilidad del Estado por actos negligentes de sus funcionarios y empleados en el ejercicio de ellos.

nuestro ordenamiento el principio de la fe pública registral, imponemos sobre el Registrador la más alta expectativa de rigurosidad en sus funciones operacionales.[16]

Concluimos, por consiguiente, que al E.L.A. no debió extendérsele inmunidad en este caso por la omisión negligente del Registrador de la Propiedad.[17]

IV

En el tercer y último señalamiento de error, la peticionaria indica que incidió el TCA al sostener que no se han ocasionado daños como resultado de la omisión negligente del Registrador.

Dicho error no se cometió, ya que de un análisis de la sentencia recurrida se desprende que el TCA se limitó a señalar que el foro primario, al emitir la sentencia sumaria extendiéndole inmunidad al Estado, no se encontraba en condiciones de saber si la parte demandante

---

[16] Cabe señalar como agravante el hecho de que la omisión surgiera en torno a la anotación de una sentencia

continúa...

... 12 continuación

en aseguramiento de un dictamen judicial. Ello así toda vez que, como reiteramos recientemente, los procedimientos en aseguramiento de la efectividad de las sentencias tienen como propósito reivindicar "no solo la justicia debida a la partes, sino también la dignidad de la función judicial." *Román Fonseca v. Ruiz Gutiérrez*, res. el 6 de agosto de 2003, 160 D.P.R.____ (2003), 2003 T.S.P.R. 130, 2003 J.T.S. 131.

[17] Es distinguible lo aquí pautado de la responsabilidad del Estado por las actuaciones de los Jueces que laboran en la Rama Judicial.

podía o no ejecutar su sentencia contra otros bienes de la parte demandada.

Ante la carencia de los elementos necesarios para determinar el valor del daño causado a la peticionaria, devolveríamos el caso al tribunal de instancia para que determine la viabilidad del reclamo de daños y perjuicios incoado por la peticionaria.

En mérito de lo anterior, revocaríamos la sentencia recurrida y devolveríamos el caso al TPI para que continúe con los procedimientos de conformidad con lo expuesto. Al no hacerlo así la mayoría, disentimos.

BALTASAR CORRADA DEL RÍO
JUEZ ASOCIADO