ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| BRYCE WESLEY GALEN<br><br>RECURRENTE<br><br>V.<br><br>CONSEJO DE TITULARES DEL CONDOMINIO MONTEFLORES Y SU JUNTA DE DIRECTORES, TANTO EN SU CAPACIDAD OFICIAL Y PERSONAL, VÍCTOR QUIÑONES CINTRÓN, (PRESIDENTE), MARÍA CORREA (TESORERA), MARÍA FIGUEROA (SECRETARIA), JOSÉ E. NIGAGLIONI (VOCAL) JESSICA FUSTER (VOCAL)<br><br>RECURRIDOS | KLRA202500031 | *REVISIÓN JUDICIAL* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: C-SAN-2023-0015567<br><br>Sobre:<br><br>Condominio |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

Brignoni Mártir, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2025.

Comparece ante nos, el Consejo de Titulares del Condominio Monteflores (en adelante, "Consejo de Titulares"), a los fines de solicitar nuestra intervención para que dejemos sin efecto la "*Resolución*" emitida el 10 de diciembre de 2024 y notificada el 16 de diciembre de 2024 por el Departamento de Asuntos del Consumidor (DACo). Mediante la referida "*Resolución,*" DACo declaró nulas las disposiciones del Reglamento aprobado el día 21 de julio de 2022 (en lo sucesivo, "*Reglamento 2022*") dirigidas a prohibir los arrendamientos a corto plazo, por éstas no haberse aprobado de forma unánime. A su vez, DACo determinó la nulidad del Reglamento aprobado el 26 de abril de 2014 (en adelante, "R*eglamento 2014*"), por no cumplir con los criterios establecidos en la Ley de Condominios de Puerto Rico, Ley Núm. 129-2020, según enmendada, 31 LPRA sec. 1921 et. seq., para su adopción. Además, DACo declaró nulas

las multas impuestas al Condómino Bryce Wesley Galen (en lo sucesivo, "el recurrido"), y le impuso al Consejo de Titulares y a la Junta de Directores el pago de $3,000.00 en concepto de honorarios de abogado por temeridad.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

**I.**

El 15 de junio de 2023, el recurrido presentó la "*Querella*" de epígrafe. Mediante esta, expuso que desde el 30 de diciembre del año 2020 es titular del apartamento PH-11 ubicado en el Condominio Monteflores. Expresó además que la *Escritura Matriz* de dicho Condominio fue otorgada el 7 de diciembre del 1964. Respecto al origen de su reclamación, aseveró que esta surgía a raíz de las multas que le impuso la Junta de Directores del referido Condominio al amparo de unas disposiciones reglamentarias nulas.[1] Sobre el particular, expresó que el 21 de julio de 2022 el Consejo de Titulares celebró una "*Asamblea Extraordinaria*," la cual tuvo como tema central enmendar el entonces vigente "*Reglamento 2014*". Sostuvo que, en dicha asamblea, mediante la aprobación de una nueva reglamentación ("*Reglamento 2022*"),[2] se ratificaron algunas disposiciones del "*Reglamento 2014.*" Ello, según arguyó, a pesar de que las disposiciones del referido "*Reglamento 2014*" adolecían de nulidad por no existir constancia de que fueron aprobadas unánimemente. De igual modo, aseveró que el "*Reglamento 2022*" no había cumplido con el requisito de votación unánime, puesto que la votación para su aprobación tuvo como resultado doce (12) votos a favor y uno (1) en contra.

---

[1] Surge del expediente ante nuestra consideración que el recurrido fue multado desde el 31 de diciembre de 2023 hasta el 10 de septiembre de 2024 por la cantidad total de $247,438.66. Véase, pág. 423-536 del apéndice del Consejo de Titulares.

[2] Surge del Acta de la referida "*Asamblea Extraordinaria*," que mediante la aprobación del "*Reglamento 2022*" se ratificaron varias disposiciones del "*Reglamento 2014*," incluyendo la atinente a los alquileres. En lo pertinente, la disposición sobre alquileres lee como sigue: "***En ningún caso se permitirá, a un titular, arrendar su propiedad, por un periodo menor de seis (6) meses.***" El "*Reglamento 2022*" fue presentado al Registro de la Propiedad mediante la "*Escritura Número tres (3): Acta para Inscribir Enmienda al Reglamento Condominio de Monteflores*," otorgada el 2 de marzo de 2023.

Según argumentó, para la aprobación de ambos reglamentos se requería la votación unánime de los titulares del Condominio Monteflores. Ello así, puesto que sus disposiciones enmendaban la *Escritura Matriz* de dicho Condominio a los efectos de prohibir los alquileres a corto plazo. Por lo cual, peticionó a DACo que declara la nulidad de toda disposición reglamentaria dirigida a enmendar la *Escritura Matriz* del Condominio. En virtud de lo expuesto, peticionó a DACo que emitiera una orden de cese y desista a los efectos de ordenar al Consejo de Titulares y la Junta de Directores que cesara de interferir con el uso de su propiedad. Además, solicitó que se les impusiera a las referidas partes el pago de una indemnización en daño; más la imposición de costas, gastos y honorarios de abogado.

En reacción, el 12 de septiembre de 2023 el Consejo de Titulares y la Junta de Directores del Condominio Monteflores, compuesta por Víctor Quiñones Cintrón, María Correa, María Figueroa, José E. Nigaglioni y Jessica Fuster (en adelante, en conjunto, "los querellados"), presentaron "*Contestación a Querella*." [3] En síntesis, negaron los planteamientos atinentes a la nulidad del "*Reglamento 2022*," según expuestos por el recurrido. Aseveraron, que la presentación de la "*Querella*" realmente simbolizaba un intento del recurrido para impugnar fuera de término la adopción del referido reglamento. Además, contrario a lo aducido por el recurrido argumentaron que el "*Reglamento 2022"* fue aprobado de forma unánime. A tono de ello, adujeron que el voto del recurrido se entendía por no puesto debido a que no fue fundamentado. De otra parte, arguyeron que las multas impuestas al recurrido están amparadas en las disposiciones del "*Reglamento 2022*" y versan sobre hechos ocurridos luego de la vigencia de este. En vista de lo anterior, solicitaron que se declarara *No ha Lugar* la "*Querella*" presentada y se le impusiera al recurrido el pago de costas y honorarios de abogado.

---

[3] El 18 de enero de 2024, los miembros de la Junta de Directores en su carácter personal, presentaron "*Contestación a Querella*." En apretada síntesis, negaron las alegaciones principales de la "*Querella*" y sostuvieron que el recurrido no tenía legitimación activa para presentar una reclamación en contra de los miembros de la Junta de Directores.

Así las cosas, el 25 de junio de 2024, DACO emitió una "*Orden de Señalamiento de Vista Administrativa mediante Videoconferencia.*" La referida vista fue señalada para el 7 de agosto de 2024. El día de la vista, las partes tuvieron la oportunidad de presentar **argumentos** sobre los hechos del caso. A su vez, DACo les ordenó a dichas partes que presentaran memorandos de derecho.[4] En cumplimiento de lo ordenado, el 15 de agosto de 2024, el recurrido presentó "*Moción en Cumplimiento de Orden Sometiendo Memorando en Torno al Artículo 14 de la Ley de Condominios.*" Por su parte, el 30 de agosto de 2024, los querellados presentaron "*Moción en Reacción a Memorando de Derecho y en Cumplimiento de Orden de este Honorable.*"

En la misma fecha de 15 de agosto de 2024, el recurrido presentó "*Solicitud de Resolución Sumaria ante la Nulidad Ab Initio de la Enmienda a Reglamento para Prohibir los Alquileres a Corto Plazo.*"[5]  Aseveró, que la *Escritura Matriz* del Condominio Monteflores no contenía disposición que prohibiera el alquiler de los apartamentos, ya fuera a corto o largo plazo. Por lo cual, según alegó, una enmienda a la *Escritura Matriz* para prohibir los alquileres a corto plazo debía resultar del consentimiento unánime de los titulares del Condominio. A tono de ello, reiteró que dicha unanimidad

---

[4] Conforme también ordenado, el 24 de septiembre de 2024, las partes presentaron en conjunto "*Moción Conjunta Informando Prueba Documental al Honorable Departamento de Asuntos del Consumidor.*" Surge de dicho documento que las referidas **partes estipularon** la siguiente prueba documental: "Escritura Matriz Número 2 del 7 de diciembre de 1964 sometiendo al Condominio Monteflores al Régimen de Propiedad Horizontal;" "Escritura Núm. 6 de Compraventa de apartamento 11 a favor de Bryce Galen. (autenticidad y no contenido);" "Convocatoria Asamblea Extraordinaria del Consejo de Titulares de 21 de julio de 2022;" "Certificación y Acta de Asamblea Extraordinaria de 21 de julio de 2022;" "Hoja de Asistencia a Asamblea Extraordinaria del Consejo de Titulares 21 de julio de 2022;" "Reglamento Enmendado del Condominio Monteflores que se alega por la parte Querellada que quedó aprobado el 22 de julio de 2022;" "Proxys Asamblea Extraordinaria del Consejo de Titulares 21 de julio de 2022;" "Escritura Núm. 3 sometiendo ante el Registro de la Propiedad el Reglamento Enmendado del Condominio Monteflores que se alega por la parte Querellada que quedó aprobado [el] 22 de julio de 2022 con sus anejos;" "Certificación de Propiedad 5 de julio de 2023 Inmueble, finca número 16131;" y "Estado de Cuenta correspondiente al mes de agosto de 2024, generado por Monteflores, cobrando las multas que se impugnan en la presente acción (autenticidad y no contenido)." Véase, apéndice del Consejo de Titulares, pág. 265-266.
[5] El recurrido acompañó su solicitud con la siguiente prueba documental: "*Copia Simple*" de la Escritura Número 2 sobre "*Organización de un Régimen de Condominio del 7 de diciembre de 1964;*" Reglamento del Condominio Monteflores de fecha del 26 de abril de 2014; "*Escritura Número Seis (6) [:] Compraventa y Designación de Hogar Seguro*" de fecha del 30 de diciembre de 2020; Acta de la Asamblea Extraordinaria del 21 de julio de 2022; "*Reglamento del Condominio Monteflores;*" "*Escritura Número Tres (3): "Acta para Inscribir Enmienda al Reglamento del Condominio de Monteflores*" del 2 de marzo de 2023; "*Certificación de Acta;*" y Sentencia del Tribunal de Apelaciones de Puerto Rico del 30 de junio de 2017, caso KLRA201700235 consolidado con KLRA201700246.

no ocurrió en este caso, puesto la votación para aprobar el "*Reglamento 2022*," el cual contemplaba la prohibición de los alquileres a corto plazo, resultó con doce (12) votos a favor y uno (1) voto en contra. En virtud de ello, solicitó a DACO que dispusiera sumariamente del asunto. En consecuencia, peticionó que se declarara la nulidad del "*Reglamento 2022*."

En atención de la petición del recurrido, el 23 de septiembre de 2024, DACo emitió "*Notificación y Orden de Mostrar Causa*." Mediante esta, les concedió a los querellados un término de veinte (20) días laborables para mostrar causa por la que no debía disponer sumariamente del presente caso.

Así pues, el 31 de octubre de 2024, los querellados presentaron "*Moción en oposición a Solicitud de Sentencia Sumaria ante la Nulidad AB INITIO de la Enmienda a Reglamento para Prohibir los Alquileres a Corto Plazo y Solicitud de Vista Argumentativa*." En esencia, sostuvieron que los hechos materiales del caso estaban en controversia, por lo que no procedía la adjudicación sumaria del pleito. Por consiguiente, argumentaron que era necesario la celebración de una vista en su fondo o en la alternativa la celebración de una vista argumentativa. En cuanto a los hechos en controversia, aseveraron que era un hecho controvertido el cumplimiento del *"Reglamento 2022"* con las disposiciones de la Ley de Condominios de Puerto Rico, *supra*. De igual modo, plantearon que había controversia sobre la existencia de unanimidad en la votación para la aprobación del aludido Reglamento. Además, arguyeron que estaba en controversia si la *Escritura Matriz* fue enmendada; si hubo legalidad en los alquileres a corto plazo realizados por el recurrido y si procedían las multas impuestas.

Tras evaluar los escritos presentados, el 16 de diciembre de 2024, DACo notificó la "*Resolución*" que hoy nos ocupa. Mediante esta, declaró nulas las disposiciones del "*Reglamento 2022*" dirigidas a prohibir los arrendamientos a corto plazo, por estas no haberse aprobado de forma unánime. A tono de ello, expresó que la referida prohibición no está

contemplada en la *Escritura Matriz* del Condominio Monteflores, lo que implica que los condóminos deben autorizarla por votación unánime. A su vez, DACo determinó que el "*Reglamento 2022*" no podía enmendar al "*Reglamento 2014,*" dado que este último adolece de nulidad por no cumplir con las disposiciones de la Ley de Condominios de Puerto Rico, *supra* para su adopción. Específicamente, concluyó que el "*Reglamento 2014*" no fue recogido en escritura pública ni presentado al Registro de la Propiedad conforme lo establece la precitada legislación. Además, DACo declaró la nulidad de las multas impuestas al recurrido por estas ser contrarias al Artículo 34 del "*Reglamento 2022*" y al Artículo 49(i) de la Ley de Condominios de Puerto Rico, 31 LPRA sec. 1922u. Finalmente, DACo les impuso a los querellados que pagaran al recurrido la cantidad de $3,000.00 en concepto de honorarios de abogado por temeridad.

A su vez, como parte de la referida "*Resolución,*" DACo esbozó las siguientes determinaciones de hecho:

1. El Consejo de Titulares del Condominio Monteflores es el organismo que, por disposiciones ley, es la autoridad suprema y el órgano rector y deliberativo del régimen horizontal, con personalidad jurídica y constituido por todos los titulares, y representa el interés colectivo y propietario de este edificio de carácter residencial, antes reglamentado bajo la Ley de Condominios, Ley Núm. 104 de 25 de junio de 1958 y la Ley Núm. 157 de 4 de junio de 1976, según emendada por la Ley Núm. 103 de 5 de abril de 2003, todas derogadas en atención a la Ley de Condominios vigente, Ley Núm. 129 de 16 de agosto de 2020.

2. El Régimen de Propiedad Horizontal quedó constituido mediante la Escritura Pública Número 2, intitulada, Organización de un Régimen de Condominio, otorgada el 7 de diciembre de 1964, ante el Notario Ernesto C. Blanco.

3. El día 7 de diciembre de 1964, se agregó el Reglamento del Condominio a la Escritura Pública Número 2, sobre, Organización de un Régimen de Condominio o escritura de constitución del Régimen.

4. La Escritura Matriz del Régimen de Propiedad Horizontal u Escritura de Organización de un Régimen de Condominio, no contiene disposición que prohíba los alquileres, tanto en su modalidad a corto o largo plazo. La Escritura Matriz no ha sido enmendada posteriormente para incorporar cambios relacionados al tema de alquileres.

5. La Escritura Matriz del Régimen, señala que los apartamentos serán destinados para fines residenciales legítimos, permitidos por ley y el reglamento del Condominio. De igual modo, el Reglamento en el inciso 11 de la Escritura Matriz consigna que cada apartamento se dedicará exclusivamente a fines residenciales y no podrá ser usados para fines contrario a la ley, a la moral y las buenas costumbres.

6. El inciso 2 del Reglamento agregado a la Escritura Matriz establece lo siguiente: "Todos los titulares de los titulares de los apartamientos actualmente existentes en dicha propiedad o que puedan existir en el futuro, sus arrendatarios y todas las personas que residan o utilicen los mismos, quedan sometidos y obligados al cumplimiento de este Reglamento bastanto la simple adquisición, arrendamiento o mera ocupación de dichos apartamientos para que se entiendan que aceptan y quedan obligados a su cumplimiento."

7. Ni la Escritura Matriz del Condominio Monteflores del 7 de diciembre de 1964 ni el Reglamento contenido en la Escritura Matriz, contiene prohibición ni limitación o periodo mínimo alguno para el alquiler de apartamentos. Ni la Escritura Matriz ni el Reglamento del 7 de diciembre de 1964, establece que las unidades de vivienda del Condominio no se podrán alquilar por periodos menores a 6 meses.

8. El 26 de abril de 2024, fue aprobado un Reglamento del Condominio Monteflores, el cual no fue otorgado en Escritura Pública y por consiguiente, no fue presentado en el Registro de la Propiedad según requería el Artículo 36[6] y el Artículo 37[7] de la Ley Número 104 de 25 de junio de 1958, según emendada, (Ley de Condominios vigente para el 2014).

9. El Artículo 29 (E) del Reglamento de 2014 señaló lo siguiente: "Aún cuando se le reconoce a todo titular de derecho arrendar un apartamento o local, de así hacerlo, será responsable de lo siguiente: (E): - En ningún caso se permitirá, a un titular, arrendar su propiedad, por un periodo menor de seis (6) meses."

---

[6] Artículo 36. --- (31 LPRA sec. 1293) La administración de todo inmueble constituido en propiedad horizontal se regirá por lo dispuesto en esta ley, y además por un reglamento que deberá insertarse en la escritura de su constitución, o que se agregará a dicha escritura. Copia certificada de dicha escritura y del Reglamento, y de toda enmienda a los mismos, deberá quedar archivada en el Registro de la Propiedad.

[7] Artículo 37. --- (31 LPRA sec. 1293a) El Reglamento podrá contener todas aquellas normas y reglas en torno al uso del inmueble y sus apartamientos, ejercicios de derechos, instalaciones y servicios, gastos, administración y gobierno, seguros, conservación y reparaciones, que no contravengan las disposiciones de esta Ley. Proveerá obligatoriamente a los extremos que siguen: (a) Forma de administración, indicándose si estará a cargo de un Director o de una Junta de Directores, con expresión de sus facultades, remoción y, en su caso, remuneración. Deberá especificar cuáles, si algunas, de sus facultades y deberes, podrá delegar el Director o la Junta de Directores a un Agente Administrador. (b) Sistema uniforme de convocatoria o citación para las asambleas de los titulares, especificando el método de notificación que permita evidenciar la misma. (c) Definición del concepto de mayoría que regirá para el inmueble en cuestión. (d) Persona que presidirá y la que llevará el libro de actas en que han de constar los acuerdos. (e) Cuidado, atención y vigilancia del inmueble en sus elementos y servicios comunes, generales o limitados. (f) Manera de recaudar los fondos de los titulares para el pago de los gastos comunes. (g) Designación y despido del personal necesario para la realización de obras y servicios comunes generales o limitados del edificio inmueble. En cualquier momento, el titular único del inmueble o, si hubiere más de uno, las dos terceras partes de los titulares y de porcentajes de participación en los elementos comunes del inmueble, independientemente de la definición de mayoría que rija para el condominio, podrán modificar el Reglamento, pero siempre deberá quedar regulado cada extremo de los comprendidos en este Artículo. La modificación tendrá que constar en escritura pública y, además, se inscribirá en el registro particular de la finca matriz, dejándose archivada en el Registro de la Propiedad copia certificada, según dispone el Artículo 36. La modificación vinculará a todos los titulares desde que se haya obtenido el voto afirmativo de las dos terceras partes de los titulares o desde que haya transcurrido el plazo de treinta (30) días dispuesto en el Artículo 38-C (e), sin que hubiera oposición de más de una tercera parte de los titulares. Respecto a tercero, la modificación no surtirá efecto sino a partir de la fecha de presentación para archivo en el Registro de la Propiedad, de la escritura pública en que se haga constar la enmienda, uniéndose copia certificada de la misma a la de la escritura de constitución del régimen y tomándose nota del hecho de la modificación del Reglamento en el registro particular de la finca matriz.

10. La parte querellante, Bryce Wesley Galen, es titular del apartamento PH-11 del Condominio Monteflores, localizado en San Juan, Puerto Rico. La parte querellante adquirió dicha propiedad mediante la Escritura Pública Número 6, sobre Compraventa y Designación de Hogar Seguro, otorgada el 30 de diciembre de 2020, ante la notario Mercybelle Redondo Rafuls.

11. El querellante adquirió el apartamento para arrendarlo a corto plazo.

12. La parte querellante adquirió el apartamento sin restricción legal[8] de término para los alquileres.

13. El 21 de julio de 2022, se celebró Asamblea Extraordinaria del Condominio Monteflores, que incluyó en su agenda, selección del puesto de Secretario (a) de la Junta de Directores y atemperar[9] el Reglamento de 2014 con la Ley Número 129 de 2020, Ley de Condominios de 16 de agosto de 2020.

14. La parte querellante, participó de la Asamblea Extraordinaria representado por proxy a través del Lcdo. Edgardo Hernández.

15. El voto del Lcdo. Edgardo Hernández en representación del querellante, en la Asamblea Extraordinaria, fue en contra de la aprobación de los Artículos que se ratificaron.

16. Del Acta de la Asamblea Extraordinaria del 21 de julio de 2022, surge que se aprobó lo siguiente:

Quedó la Sra. Digna Soto nombrada como Secretaria de la Junta de Directores del condominio Monteflores desde el día 21 de julio de 2022, sin oposición.

Que los siguientes artículos del Reglamento del Condominio Monteflores, según aprobado el 26 de abril de 2014, queden inalterados y se ratifiquen los mismo:

Artículo 11/ Mayoría
Artículo 29/ Alquileres
Artículo 32-26/ Normas de Convivencia y Actividades Prohibidas

La votación sobre la aprobación sobre estos Artículos del Reglamento de 2014. Fue 12 a favor y 1 en contra.

17. La Sección 5 del Reglamento aprobado el 21 de julio de 2022 dispone en lo pertinente lo siguiente:

"Sección 5- Alquileres (Moción 2 Art. 29)

Aun cuando se le reconoce a todo titular de derecho de arrendar un apartamento o local de así hacerlo, será responsable de lo siguiente:

a) De poner en conocimiento de ella al Consejo de Titulares por conducto de la Junta de Directores, enviando copia del contrato de arrendamiento al presidente y/o administrador.
b) Responder por los actos contrarios a la moral, a las buenas costumbres y a las disposiciones de este Reglamento por parte del arrendatario.
c) El titular arrendador, continuará siendo, conjunta y solidariamente con el arrendatario, responsable por el pago de contribuciones y aportaciones impuestas bajo el Régimen, con la aprobación del Consejo de Titulares, incluyendo los gastos comunes.

---

[8] El Reglamento 2014 no fue otorgado en escritura pública, por consiguiente, no fue presentado al Registro de la Propiedad, por lo cual no es oponible al querellante.
[9] Acta de Asamblea Extraordinaria celebrada el 21 de julio de 2022.

d) Deberá consignar de manera clara en el contrato de arrendamiento el hecho de que el arrendatario conoce el Reglamento, que se le entregó copia de este reglamento, y que los demás componentes del Régimen, y que se compromete a cumplir con todas y cada una de sus disposiciones.

e) En ningún caso se permitirá, a un titular, arrendar la propiedad, por un periodo menor de seis (6) meses.

Derecho de los inquilinos

…

…

…"

18. El 2 de marzo de 2023, se otorgó la Escritura Número 3, intitulada Acta para Inscribir Enmienda al Reglamento del Condominio Monteflores, otorgada ante el Notario Público Leniel Collazo Nazario.

19. La Escritura Número 3, intitulada Acta para inscribir Enmienda al Reglamento del Condominio Monteflores, fue presentada en el Registro de la Propiedad.

20. El Reglamento del Condominio del 21 de julio de 2022, en su Sección 7 inciso (bb) subinciso (3) estableció lo siguiente:

"bb) Incumplimiento y Sanciones:

1)…
2)…
3) Cualquier violación a este Reglamento conllevará una multa en la cantidad de $100.00. El titular será responsable del pago de la multa indistintamente de quien ocupe el apartamento. Notificada la multa, el titular tendrá diez (10) días para impugnar la misma. De no impugnarla en dicho término de tiempo, la multa es final y firme, y se incorporará a su estado de cuente del mes próximo. De impugnarla, la Junta de Directores tendrá quince (15) días para evaluar la misma y dejarla sin efecto o mantener su determinación. En caso de transcurrir el término sin que la Junta de Directores se exprese sobre la solicitud de impugnación del titular, la multa se tendrá por no puesta."

21. El Reglamento de 21 de julio de 2022, en su Sección 8, Artículo 34 "según el Reglamento anterior", dispone lo siguiente:

"Se autoriza a la Junta de Directores para imponer multas a titulares o residentes que violen las normas de convivencia y/o realicen actividades prohibidas que se describen en el Artículo treinta y dos (32) de este Reglamento del Condominio Monteflores. La violación a las normas de convivencia y realicen los actos prohibidos descritos en el Artículo treinta y uno (31) (del reglamento anterior que lee como sigue: Los ocupantes, inquilinos o visitantes podrán usar los elementos comunes de acuerdo con su destino, naturaleza y uso, con toda moderación y prudencia, tratando en todo momento de conservarlos en la mejor forma posible, y de manera que no impida, restrinja o estorbe el legítimo derecho de los demás titulares ocupantes, inquilinos o visitantes del uso de los mismos.) [C]onlleva una multa ascendente a cien dólares ($100.00) por cada infracción. Todas las multas que sean impuestas por actos de los residentes que no sean titulares, serán los titulares de los apartamentos los responsables por el pago de las mismas."

22. El querellante ha arrendado su apartamento a corto y largo plazo en múltiples ocasiones.

23. El día 20 de junio de 2023, la parte querellante presentó la querella de epígrafe, solicitando se declare la nulidad de toda enmienda a la Escritura Matriz y/o Reglamento del Condominio que prohíba los alquileres a corto plazo, quedando eliminadas las multas expedidas con relación a dicha actividad, un cese y desista

al Consejo de Titulares y la Junta de Directores de toda conducta que interfiera con los alquileres.

24. El día 26 de junio de 2023, la parte querellante presentó Moción intitulada "*Urgente solicitud de Remedio y Orden de Cese y Desista Preliminar y Permanente.*"

25. El día 13 de septiembre de 2023, la parte querellante presentó Moción intitulada "Moción Solicitando Anotación de Rebeldía y para que se Dicte Resolución Sumaria." El día 7 de noviembre de 2023, la parte querellante presentó Segunda Moción Reiterando Solicitud de Anotación de Rebeldía y para que se dicte Resolución Sumaria en Rebeldía.

26. El día 21 de agosto de 2023, esta presentó Moción intitulada "*Moción Asumiendo Representación Legal y de Prórroga para Presentar Alegación Responsiva.*" El 12 de septiembre de 2023, la parte querellada, presentó Contestación a Querella. Además, el día 14 de septiembre de 2023, presentó "*Oposición a Moción de Anotación de Rebeldía.*"

27. El día 23 de enero de 2024, este Departamento emitió Notificación y Orden en la cual decretó lo siguiente:

"Se declara No Ha Lugar la solicitud de Anotación de Rebeldía presentada por la parte querellante.

Se declara No Ha Lugar la Moción Urgente Solicitud de Remedio y Orden de Cese y Desista Preliminar y Permanente presentada por la parte querellante."

28. A la fecha del 10 de septiembre de 2024, el querellante había sido multado, por la parte querellada, por la suma de $247, 438.66, por no permitirse arrendar el apartamento por periodos menores de seis meses, por no consignar el contrato de arrendamiento que el arrendatario conoce el reglamento y que se le entregó copia, así como que se compromete a cumplir con el reglamento, multa por no realizar pagos de las multas ya que no se aceptan pagos parciales, todas las multas se repiten diariamente hasta que se cumpla con el requisito. El estado de cuenta que establece las multas no hace referencia qué artículo del Reglamento del Condominio se ha violado.

29. No existe disposición en la Escritura Matriz ni en el Reglamento de 2022 sobre la imposición de multas de manera progresiva, diarias o frecuencia de cada multa, tampoco existe en el Reglamento la imposición de multas por no realizar pagos de multas impuestas.

En desacuerdo con la "*Resolución*" emitida por DACo, el 15 de enero de 2025, el Consejo de Titulares compareció ante nos a través de un recurso de revisión judicial. Mediante este, esbozó los siguientes señalamientos de error:

1. Erró el Departamento de Asuntos al Consumidor al declarar "ha lugar" la Solicitud de Sentencia Sumaria presentada por el querellante apelado cuando existen controversias de hecho.

2. Erró el Departamento de Asuntos al Consumidor al determinar que el Reglamento del Condominio Monteflores del 21 de julio de 2022, no fue aprobado conforme a las disposiciones de la Ley de Condominios del 16 de agosto de 2020, según enmendada.

3. Erró el Departamento de Asuntos al Consumidor al <u>no</u> determinar que el Reglamento del Condominio Monteflores del 21 de julio de 2022, fue aprobado unánimemente según definido por la Ley de Condominios de 16 de agosto de 2020, según enmendada.

4. Erró el Departamento de Asuntos al Consumidor al <u>no</u> hacer determinaciones claras y vinculantes sobre las multas impuestas al querellante sobre otras violaciones no relacionadas al alquiler a corto plazo.

5. Erró el Departamento de Asuntos al Consumidor al <u>no</u> hacer determinaciones en cuanto a las violaciones del querellante a las disposiciones de alquileres a corto plazo vigentes en el Municipio de San Juan y la Oficina de Turismo aun cuando se presentó evidencia al respecto.

El 3 de febrero de 2025, el recurrido presentó ante este Tribunal un "*Alegato en Oposición a Petición de Revisión [Judicial].*" Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco doctrinal aplicable al recurso ante nuestra consideración.

**II.**

**A.      Ley de Condominios de Puerto Rico:**

La legislación sobre Condominios fue adoptada para crear "un régimen jurídico que facilite la vida en convivencia y propicie la disponibilidad de viviendas en un área restringida de terreno." Exposición de Motivos de la Ley de Condominios de Puerto Rico, *supra*. En esencia, en el referido régimen jurídico coexisten un dominio exclusivo sobre bienes inmuebles y un condominio forzoso de elementos comunes. *Bravman, González v. Consejo Titulares*, 183 DPR 827, 844 (2011). Uno de los principios rectores del sistema de condominios es garantizar a cada titular el pleno disfrute de su propiedad. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 324 (2012). A tenor de ello, los apartamentos de un condominio pueden "individualmente transmitirse, gravarse y ser objeto de dominio o posesión, y de toda clase de actos jurídicos inter vivos o mortis causa, con independencia total del resto del inmueble que formen parte." 31 LPRA sec. 1921d; *Bravman, González v. Consejo Titulares*, supra, pág. 847. Ello, en el marco de la sana convivencia y dentro de los límites de los derechos que les asisten a los demás titulares. 31 LPRA sec. 1921a. Por lo cual, al momento en que los titulares ejerzan y reclamen sus derechos,

su actuar debe ser conforme a los principios de buena fe, de no ir en contra de sus propios actos y de no recaer en el abuso del derecho. *Íd.*

El régimen jurídico de condominios nace de la voluntad de uno o varios titulares plasmada en una escritura pública conocida como escritura matriz. 31 LPRA sec. 1921b(m). "La escritura matriz constituye la fuente vinculante para los condóminos, luego de la ley." *Batista, Nobbe v. JTA. Directores*, 185 DPR 206, 222 (2012), citando a MJ Godreau, *El condominio*: El régimen de propiedad horizontal en Puerto Rico, 1ra ed., Río Piedras, Puerto Rico, Ed. Dictum, 1992, pág. 71. "[U]na vez sea inscrita en el Registro de la Propiedad, ésta pasa a ser un estatuto privado que gobierna a los condóminos o titulares y obliga a terceros." *Bravman, González v. Consejo Titulares*, supra, pág. 845. "Así pues, la escritura matriz es el mapa que guiará con relación al destino y uso de las áreas que comprenden el inmueble." *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 160 (2011). Sobre la referida escritura matriz el Artículo 4 de la Ley de Condominios de Puerto Rico, *supra* establece, entre otras cosas, lo siguiente:

> La escritura que establezca el Régimen de Propiedad Horizontal expresará clara y precisamente el destino y uso de toda área comprendida en el inmueble, excepto que esta Ley autorice lo contrario, una vez fijado dicho destino y uso sólo podrá ser variado mediante el consentimiento de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, excepto las modificaciones a la escritura matriz, con el fin variar el uso de un apartamento de uno residencial a uno no residencial o viceversa, requerirán del consentimiento unánime de todos los titulares. **Las disposiciones de variaciones de destino y uso en este Artículo, con relación al número de votos requeridos, no se aplicarán a los inmuebles sometidos al Régimen de Propiedad Horizontal previo a la aprobación de esta Ley, los cuales sólo se podrán modificar por unanimidad de los titulares**. (Énfasis suplido). 31 LPRA sec. 1921c.

Nótese del precitado artículo que la Ley de Condominios de Puerto Rico, *supra* regula el contenido de la escritura matriz. Entre las exigencias de contenido dispuestas en la Ley, se encuentra el deber de indicar claramente el destino del inmueble y sus apartamentos, con expresión de las restricciones que tenga su uso. 31 LPRA sec. 1921k. Además de la escritura matriz, un inmueble constituido bajo la normativa de condominios

se regirá por un reglamento. Dicho reglamento se insertará a la escritura de su constitución, y se presentará en el Registro de la Propiedad al igual que cada una de las enmiendas que se le realicen. 31 LPRA sec. 1921l. De esta manera, el referido reglamento gozará de publicidad registral y con ello será oponible a terceros. Véase, *Park Tower, S.E. v, Registradora*, 194 DPR 244, 256 (2015); *Santiago v. E.L.A.*, 163 DPR 149, 161-162 (2004).

En lo pertinente, en la escritura matriz y en el reglamento de un inmueble sometido al régimen propiedad horizontal se pueden incluir disposiciones para regular los alquileres. Sobre ello, la legislación sobre condominios dispone lo siguiente: "[s]alvo que en la escritura matriz o en el reglamento, exista una prohibición expresa o que establezca un término mínimo de arrendamiento, no se podrá prohibir el arrendamiento de los apartamentos a corto plazo en los inmuebles sometidos al Régimen de Propiedad Horizontal." 31 LPRA sec. 1921l.

De otra parte, la Ley de Condominios de Puerto Rico, *supra* provee disposiciones dirigidas a regular las asambleas y acuerdos que lleven a cabo los titulares de un inmueble sometido al régimen de propiedad horizontal. En lo concerniente, el artículo 52 de la referida legislación establece lo siguiente con relación a la votación de los referidos acuerdos:

[…]

c) Cuando los titulares presentes en una asamblea convocada para tomar un acuerdo que requiera unanimidad o de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes estos adoptasen dicho acuerdo, aquellos que, debidamente citados no hubieren asistido serán notificados de modo fehaciente y detallado del acuerdo adoptado, y, si en un plazo de treinta (30) días a partir de dicha notificación no manifestaren en la misma forma su discrepancia quedarán vinculados por el acuerdo que no será ejecutable hasta que transcurra tal plazo, salvo que antes manifestaren su conformidad.

La oposición a un acuerdo que requiera unanimidad o dos terceras partes (2/3) de todos los titulares que a su vez reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes deberá fundamentarse expresamente, bien en la asamblea o por escrito, según se dispone en el párrafo anterior, y en ningún caso podrá basarse en el capricho o en la mera invocación del derecho de propiedad. La oposición infundada se tendrá por no puesta. La declaración de un voto caprichoso será tomada por el Consejo de Titulares en la asamblea en cuestión.
31 LPRA sec. 1922x.

[…]

A tenor de lo anterior, es meritorio señalar que un titular actúa de mala fe y abusa de su derecho cuando ejerce una postura mediante la cual incumple con sus obligaciones de titular. Véase, *Consejo Tit. v. Galerías Ponceñas*, 145 DPR 315, 340-341 (1998).

**B.    Procedimiento Adjudicativo y Disposición sumaria de los asuntos que se dilucidan ante las agencias administrativas**:

El proceso adjudicativo es aquel por el cual "se adjudican derechos u obligaciones de una o más personas específicas." *Mun. de San Juan v. Jta. Planificación,* 189 DPR 895, 906 (2013). En el caso de las agencias administrativas los procedimientos adjudicativos se caracterizan por ser de naturaleza cuasi judicial. *J. P. v. Frente Unido I*, 165 DPR 445, 461 (2005). Estos tipos de procesos son regulados por un cuerpo de reglas mínimas establecidas en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9641-9662; *SLG Saldaña-Saldaña v. Junta,* 201 DPR 615, 621 (2018).

La referida legislación permite a las agencias, al amparo de ciertos criterios, resolver una controversia sumariamente. *O.C.S v. Universal*, 187 DPR 164, 177-178 (2012). A tenor de ello, la sección 3.7(a) de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9647 establece lo siguiente:

> (a) Si la agencia determina que es necesario celebrar una vista adjudicativa, podrá citar a todas las partes o sus representantes autorizados e interventores, ya sea por su propia iniciativa o a petición de una de las partes, a una conferencia con antelación a la vista, con el propósito de lograr un acuerdo definitivo o simplificar las cuestiones o la prueba a considerarse en la vista. Se podrán aceptar estipulaciones, siempre que la agencia determine que ello sirve a los mejores intereses públicos.
>
> (b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia

real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.

De conformidad con lo anterior, El Reglamento de Procedimientos Adjudicativos de DACo, Reglamento Núm. 8034 del 14 de junio de 2011, establece en la Regla 11.1 lo siguiente:

> El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

La adjudicación sumaria persigue agilizar los procedimientos ante las agencias cuando no existen hechos esenciales controvertidos. *O.C.S v. Universal*, supra.  Ello, dado que, "[n]ada impide que una agencia pueda adjudicar sin celebrar una vista evidenciaría cuando no exista controversia sobre los hechos y, además, toda la evidencia documental que surge del expediente señale claramente la corrección de la determinación de la agencia." *Íd.* "De este modo, se evita el tener que celebrar una audiencia evidenciaría que no aportaría ningún elemento meritorio al proceso analítico." *Íd,* citandoa J. Echevarría Vargas, *Derecho administrativo puertorriqueño,* San Juan, Ed. Situm, 2012, pág. 231.

**C.  Revisión Judicial y deferencia a las determinaciones de agencias administrativas**:

Es conocido, que las determinaciones de las agencias administrativas son revisables ante el foro judicial para garantizar que estas actúan dentro de marco de las facultades que les fueron delegadas por ley. *Capote Rivera y otros v. Voilí Voilá Corporation y otros,* 2024 TSPR 29; *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022). De esta manera, los ciudadanos tienen un foro al cual recurrir para vindicar sus derechos y obtener un remedio en los casos en que las agencias actúen de forma arbitraria. *Capote Rivera y otros v. Voilí Voilá Corporation y otros,* supra. La revisión judicial de una decisión administrativa se circunscribe a examinar lo siguiente: 1) si el remedio concedido por la agencia fue el apropiado; 2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por la prueba sustancial que surgió del expediente

administrativo; y 3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc.* y otros, 2024 TSPR 70.

Cabe resaltar, que en el ejercicio de revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia administrativa. *Capote Rivera y otros v. Voilí Voilá Corporation y otros,* supra. Antes de variar la referida determinación se debe examinar la totalidad del expediente y "determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba." *Íd.* A su vez, las decisiones administrativas se deben evaluar bajo el marco de la deferencia, por razón de la experiencia y pericia de dichas agencias respecto a las facultades que se le han delegado. *Batista, Nobbe v. JTA. Directores*, supra, pág. 215. En consideración a la aludida deferencia, se ha establecido que "las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras que la parte que las impugna no produce suficiente evidencia para derrotarlas." *Batista, Nobbe v. JTA. Directores*, supra, pág. 215. A la luz de ello, la parte que impugne una decisión administrativa tiene el peso de la prueba para demostrar que esta no se sustenta en el expediente administrativo o que las conclusiones a las cuales llegó la agencia son irrazonables. *OEG v. Martínez Giraud*, supra, pág. 89.

**III.**

En esencia, el Consejo de Titulares sostiene que existen hechos en controversia los cuales impiden la adjudicación sumaria del caso. Específicamente, aduce que existe controversia sobre si existió unanimidad en la aprobación del "*Reglamento 2022*." Argumenta, que aunque en efecto el voto del recurrido fue en contra de la adopción del "*Reglamento 2022*," dicho voto no se debe tomar en consideración debido a que no estuvo fundamentado conforme a las disposiciones del Artículo

52 de la Ley de Condominios de Puerto Rico, *supra.* A su vez, alega que el recurrido no presentó prueba que demostrara que la aprobación del aludido Reglamento fue contraria a la Ley de Condominios de Puerto Rico, *supra*. Por último, sostiene la procedencia de las multas impuestas al recurrido bajo el argumento de que éste había infringido en múltiples ocasiones el "*Reglamento 2022.*"

Por su parte, el recurrido arguye que DACo tenía facultad para disponer del caso sumariamente. A tono de ello, asevera que la *Escritura Matriz* del Condominio Monteflores no contiene disposición alguna que prohíba los alquileres tanto a corto como a largo plazo. Ante lo cual, sostiene que el establecimiento de una prohibición al respecto debía contar con el voto unánime de los titulares del referido Condominio. En cuanto a la imposición de multas, aduce que estas no se sostienen debido a que la *Escritura Matriz* y el Reglamento integrado a la misma no conceden autorización para imponer multas. A su vez, asevera que el "*Reglamento 2014*" adolece de nulidad por no haberse inscrito en el Registro de la Propiedad conforme a la Ley de Condominios de Puerto Rico, *supra.*

Tras evaluar cuidadosamente el expediente ante nuestra consideración, concluimos *confirmar* la decisión de DACo. Veamos.

Por estar relacionados entre sí se discutirán en conjunto el primer, segundo y tercer error. Siendo así, conforme surge del expuesto marco doctrinal, DACo tiene facultad para disponer sumariamente de los casos ante su consideración cuando estos no presenten hechos materiales en controversia. Ante ello, DACo actuó correctamente al resolver de forma sumaria el caso de epígrafe, pues este no presenta controversia en sus hechos esenciales. Entiéndase, no existe controversia sobre que a partir del 30 de diciembre de 2020 el recurrido se convirtió en titular del apartamento PH-11 del Condominio Monteflores. Tampoco existe controversia sobre el hecho de que el 21 de julio de 2022 el Consejo de Titulares celebró una asamblea mediante la cual, entre otras cosas, se adoptó el "*Reglamento 2022*." De igual modo, no es un hecho controvertido

que el referido Reglamento ratificó la prohibición de alquileres a corto plazo establecida en el "*Reglamento 2014.*" A su vez, no está en controversia que el recurrido compareció legítimamente vía representación a dicha asamblea y en el momento de ejercer su voto se opuso a la aprobación del "*Reglamento 2022*." Ante ello, la votación culminó en 12 votos a favor y uno en contra

Por otro lado, la *Escritura Matriz* es un documento que fue estipulado por las partes y del mismo no se desprende prohibición o limitación alguna para el alquiler de los apartamentos del Condominio. Además, el Consejo de Titulares no controvirtió el hecho de que el "*Reglamento 2014*" no fue inscrito en el Registro de la Propiedad. En vista de lo anterior, solo resta aplicar el derecho a los hechos de este caso.

Nuestro ordenamiento jurídico concibe a la escritura matriz de un condominio como una especie de contrato privado al cual se adhieren los titulares al adquirir un apartamento. Véase, *Bravman, González v. Consejo Titulares*, supra. La referida escritura matriz dirige y gobierna de forma particular la existencia de cada condominio. Ahora bien, el régimen de propiedad horizontal está supeditado a un orden jerárquico en el que tiene primacía la Ley de Condominios de Puerto Rico, *supra*. En lo aquí concerniente, la referida legislación en su Artículo 4, *supra* establece que para variar el uso y destino de cualquier área de un inmueble sometido al régimen de propiedad horizontal los condóminos deberán votar por dicha variación. La referida votación deberá ser **unánime** en los casos, como el aquí presente, en el que el inmueble fue sometido al régimen de propiedad horizontal antes de la aprobación de la vigente Ley de Condominios de Puerto Rico, *supra*.

Conforme surge de la prueba documental estipulada por las partes, la *Escritura Matriz* del Condominio Monteflores no prohibía ni limitaba los alquilares de los apartamentos que son parte del aludido Condominio. Por lo cual, la prohibición de los alquileres a corto plazo incluida en el "*Reglamento 2014*" y ratificada en el "*Reglamento 2022*" se dirigía a crear

una limitación de uso para los apartamentos del Condominio Monteflores, la cual no tenía existencia previa. Así pues, el nacimiento de tal prohibición debía ampararse en el voto unánime de los titulares del condominio. Ello no ocurrió en este caso, puesto que conforme al Acta de la *Asamblea Extraordinaria* del 21 de julio de 2022[10] la votación para aprobar las disposiciones del "*Reglamento 2022*" resultó en doce (12) votos a favor y uno (1) en contra.

A pesar de los resultados que se desprenden del Acta de la *Asamblea Extraordinaria*, el Consejo de Titulares plantea que existió una votación unánime. Sostiene su argumento bajo la premisa de que la oposición o voto en contra del recurrido se debe entender por no puesto por no estar debidamente fundamentado. De entrada, no surge de la referida acta alguna nota en la que se catalogue el voto del recurrido como no fundamentado. De igual modo, tampoco se recogen en dicha acta las expresiones, si alguna, que ofrecieron los titulares al momento de ejercer su voto.

Además, es necesario señalar que el titular de cualquier propiedad tiene un derecho constitucional al disfrute de su propiedad. Art. II, sec. 7, Const. ELA [Const. PR], LPRA, Tomo 1. Similar reconocimiento se establece en el sistema de condominios al garantizar el disfrute de la propiedad de cada condómino. *Consejo de Titulares v. Ramos Vázquez*, supra, pág. 324. Así pues, los condóminos pueden gravar, trasmitir y celebrar toda clase de acto jurídicos en los que su apartamento sea el objeto de la celebración. 31 LPRA sec. 1921d. Ante ello, un titular que defienda su derecho propietario y ejerza el disfrute de su propiedad dentro de las limitaciones de la sana convivencia no trastoca los principios de la buena fe ni incurre en abuso de derecho. Por consiguiente, una mera alegación de que la oposición del recurrido fue infundada no es suficiente para concluir que el voto del recurrido se debe dar por no puesto. De igual

---

[10] Véase, págs. 312-315 del apéndice del Consejo de Titulares.

modo, también es insuficiente para determinar que la aprobación del "*Reglamento 2022*" gozó de unanimidad.

En vista de lo expuesto, no erró DACo al concluir que el "*Reglamento 2022*" no fue aprobado por unanimidad y tampoco incidió al determinar que el referido reglamento no fue adoptado conforme a la Ley de Condominios de Puerto Rico, *supra*. En consecuencia, carecen de validez las multas impuestas al recurrido relacionadas al uso de su apartamento para arrendamiento a corto plazo. Estas se sostienen en disposiciones reglamentarias que no nacieron a la vida jurídica toda vez que no fueron adoptadas de conformidad a la Ley de Condominios de Puerto Rico, *supra*.

En lo atinente al cuarto señalamiento de error, el Consejo de Titulares aduce que DACo incidió al no incluir entre sus determinaciones de hechos las multas impuestas al recurrido por infracciones ajenas a los alquileres a corto plazo. No le asiste la razón. La cuestión umbral de este caso se limitaba a determinar la validez del "*Reglamento 2014*" y a examinar si la aprobación del "*Reglamento 2022*" fue conforme a las disposiciones de la Ley de Condominios de Puerto Rico, *supra*. Por lo cual, las multas no relacionadas a los alquileres a corto plazo son impertinentes a la cuestión litigiosa. Por otro lado, el Consejo de Titulares sostiene la validez de las multas impuestas al recurrido mediante el argumento de que estas se amparan en las disposiciones del "*Reglamento 2022*." Ante tal aseveración, es mérito destacar que el Consejo de Titulares no puede sustentar la referida imposición de multas en disposiciones reglamentarias inexistentes. Es decir, en disposiciones que no gozaron de la validez necesaria para surgir, implementarse y ejecutarse en contra de los condóminos.

Finalmente, el Consejo de Titulares argumenta que incidió DACo al no incluir entre sus determinaciones de hechos que el recurrido infringió reglamentación del Municipio de San Juan y de la Oficina de Turismo mediante la acción de arrendar a corto plazo su apartamento.

De entrada, según fue expuesto, los foros judiciales concedemos deferencia a las determinaciones de hecho de las agencias administrativas debido al conocimiento especializado que estas poseen. En el presente caso, las determinaciones de hecho realizadas por DACo están sustentadas en la prueba sustancial que obra en el expediente administrativo. A la luz de ello, le correspondía al Consejo de Titulares demostrar que dichas determinaciones no se sostienen en la referida prueba sustancial del expediente administrativo, y que las conclusiones de DACo son irrazonables. Sin embargo, el Consejo de Titulares adujo escuetamente en su escrito de revisión judicial que el recurrido violentó reglamentación del Municipio de San Juan y de la Oficina de Turismo al utilizar su propiedad en alquiler a corto plazo. En vista de ello, el Consejo de Titulares no fundamentó el error señalado ni demostró la pertinencia de este a la cuestión litigiosa. Por lo cual, el Consejo de Titulares no nos colocó en posición para evaluar los méritos del quinto señalamiento de error.

A la luz de lo expuesto, y de la prueba documental que obra en el expediente ante nuestra consideración, el Consejo de Titulares no cumplió con el peso de la prueba requerido para rebatir la presunción de corrección que reviste a la decisión de DACo. Siendo así, *confirmamos* la "*Resolución*" emitida por DACo.

**IV.**

Por los fundamentos expuestos, confirmamos la "*Resolución*" recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones