Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| JOSÉ L. BOU SANTIAGO, POR SÍ Y EN REPRESENTACIÓN DE BOU MAINTENANCE SERVICE, CORP.<br><br>Recurridos<br><br>v.<br><br>JCAF INVESTMENT, CORP REPRESENTADA POR SU PRESIDENTE DR. **JULIO C. ARANGO FRÍAS**<br><br>Peticionario<br><br>v.<br><br>AROVA FOODS, LLC; ÁNGEL ALVARADO<br><br>Terceros Demandados Recurridos | KLCE202500608 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.:<br>K CD2013-0629<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Juez Barresi Ramos.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 22 de julio de 2025.

### I.

El 3 de junio de 2025, el señor Julio C. Arango Frías (señor Arango Frías o peticionario) presentó una *Petición de certiorari* en la que nos solicitó que revoquemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) el 9 de abril de 2025, notificada y archivada en autos el 15 de abril de 2025.[2] En el dictamen, el TPI declaró No Ha Lugar una solicitud del peticionario para dejar sin efecto un asiento en el Registro de la Propiedad. La solicitud ocurrió dentro de la reclamación de cobro de dinero promovida por el señor José L. Bou

---

[1] Véase Orden Administrativa OAJP2021-086 del 4 de noviembre de 2021.
[2] Apéndice de la *Petición de certiorari*, Anejo V, pág. 35.

Santiago (señor Bou Santiago) y Bou Maintenance Service, Corp. (en conjunto, parte recurrida) en contra del peticionario y JCAF Investment Corp. (JCAF Investment) y en la que participan Arova Foods, LLC (Arova Foods) y el señor Ángel Alvarado (señor Alvarado) como terceros demandados.

El 5 de junio de 2025, emitimos una *Resolución* en la que le concedimos a la parte recurrida un término de diez (10) días para exponer su posición sobre los méritos del recurso.

El 23 de junio de 2025, la parte recurrida presentó una *Moción en solicitud de prorroga* en la que nos solicitó que le concediéramos una prórroga para presentar su oposición a la expedición del recurso.

El 24 de junio de 2025, emitimos una *Resolución* en la que le concedimos a la parte recurrida un término final hasta el 7 de julio de 2025 para exponer su posición sobre los méritos del recurso.

El 7 de julio de 2025, la parte recurrida radicó una *Moción notificando situación y término adicional* en la que solicitó una prórroga hasta el 14 de julio de 2025, para presentar su posición.

El 9 de julio de 2025, emitimos una *Resolución* en la que declaramos Ha Lugar la prórroga solicitada.

El 14 de julio de 2025, la parte recurrida radicó un *Memorando en oposición a la expedición del certiorari solicitud de desestimación* en el que se opuso a la expedición del auto solicitado.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales más relevantes a la atención de este caso.

**II.**

El caso de marras tiene su génesis el 14 de marzo de 2013 cuando el señor Bou Santiago, por su parte y en representación de Bou Maintenance Service Corp., presentó una *Demanda* sobre cobro

de dinero en contra del peticionario en reclamo del pago de una deuda contraída con la corporación.[3]

Varios años más tarde, el 3 de abril de 2017, el señor Bou Santiago radicó una *Demanda Enmendada* en la que solicitó que, en virtud de sus obligaciones, se le ordenara a JCAF Investment, al señor Arango Frías, su esposa, la señora Joanne Marín Favale y la sociedad legal de gananciales compuesta por ambos, pagar solidariamente $100,000.00, más intereses vencidos ascendentes a $5,336.36 por ocho (8) meses vencidos y no pagados.[4] También, solicitó que se condenara al señor Bou Santiago a pagar $160,000.00 más los intereses por mora acumulados desde el 30 de mayo de 2012.

En específico, alegó lo siguiente:

[...]
4. La parte demandada ofreció a los demandantes unas inversiones con el propósito de obtener una ganancia en concepto de intereses a su favor, devolviendo el principal al concluir el término.

5. El 14 de febrero de 2011, la compañía JCAF Investment-Corp., por conducto de su Presidente Julio C. Arango Frías, hizo una oferta de inversión de $100,000.00 a Bou Maintenance Service Corp., por conducto de su Presidente José Bou Santiago, con la intención de pagarle el 8% de interés anual con un vencimiento a 2.5 años (30 meses), obligándose a realizar pagos mensuales por concepto intereses de $666.67 para finalmente en el mes 30 devolver el principal y los intereses del último mes para un total de $100,666.67, conforme a una tabla de amortización que suscribe. (Anejo 1)

6. El 14 de febrero de 2011, la codemandada Bou Maintenance Service, Corp., por conducto de su Presidente José Bou Santiago aceptó la propuesta de JCAF Investment, Corp., entregándole a su Presidente Julio C. Arango Frías el cheque 28748 de la cuenta 240-123488 del Banco Popular, por la cantidad de $100,000.00, obteniéndose el cambio del cheque el 17 de febrero de 2011, depositándolo bajo la firma y endoso de Julio C. Arango Frías en la cuenta número 7892880740 de Oriental Bank & Trust. (Anejo 2 y 3)

7. La demandada pagó los intereses de la inversión desde marzo de 2011 hasta julio de 2012, o sea por 10 meses, adeudando los pagos desde agosto de 2012 hasta el presente.

---

[3] La fecha de este incidente procesal surge de la página oficial del Poder Judicial: https://poderjudicial.pr/consulta-de-casos/.
[4] Apéndice de la *Petición de certiorari*, Anejo I, págs. 1-5. La fecha de este incidente procesal surge de la página oficial del Poder Judicial.

8. El 20 de febrero de 2012, la compañía JCAF Investment, Corp., por conducto de su Presidente Julio C. Arango Frías, suscribe un documento dirigido al Sr. José Bou Santiago, mediante el cual le hace un ofrecimiento de inversión sofisticada privada por la cantidad de $150,000.00, (Anejo 4) los que en un período de tres meses serían devueltos con un mínimo de ganancia de $10,000.00 pagaderos en su totalidad en una fecha de vencimiento y pago establecida al 30 de mayo de 2012. El Sr. Bou Santiago aceptó la oferta el 1 de marzo de 2012, entregando al Sr. Julio C. Arango Frías el cheque 0097 de la cuenta 5106000262 de First Bank a nombre de JCAF Investment, Corp. con fecha 1 de marzo de 2012, obteniéndose el cambio del cheque el 5 de marzo de 2012, depositándolo bajo la firma y endoso de Julio C. Arango Frías en la cuenta número 7892880740 de Oriental Bank & Trust. (Anejo 5). Pero, nunca ha pagado la deuda, según se obligó.

9. Del contenido de los documentos suscritos por la demandada, (Anejos 1 y 4) se puede concluir que la verdadera intención para obtener el dinero fue a modo de préstamo y no como una inversión de dinero, porque la demandada no posee ninguna licencia de la OFIC [sic], ni del Comisionado de Seguros, ni del Securities and Exchange Commission para ofrecer, establecer o mercadear inversiones de dinero o de capital. Incluso la licencia expedida por la OCIF le autoriza intermediación financiera para préstamos a través de instituciones financieras.

10. La parte demandada ya cobró los cheques entregados por los demandantes y no ha cumplido con los pagos a los que se obligó. Al momento en que se radica la demanda JCAF Investment, Corp. adeuda a la codemandada, Bou Maintenance Services, Corp. el principal por $100,000.00 más los intereses vencidos de los meses de julio 2012, agosto2012 [sic], septiembre 2012, octubre 2012, noviembre 2012, diciembre 2012, enero 2013 y febrero 2013, que representan $5,333.36, más los meses que se acumulen durante la tramitación de la presente causa de acción, más los intereses por mora desde junio de 2011 hasta su final y definitivo pago.

11. Al momento en que se radica la demanda, la demandada adeuda al codemandante José Bou Santiago la cantidad de $160,000.00, más los intereses por mora acumulados desde el 30 de mayo de 2012 hasta su final y definitivo pago.

12. La parte demandada ha incumplido los contratos de inversión, que realmente son préstamos y adeuda a los demandantes las cantidades antes expuestas, solicitándose el cumplimiento estricto del contrato y la devolución del dinero adeudado, incluyendo principal e intereses, cantidades que están vencidas, son líquidas y exigible su pago.

13. Las llamadas inversiones sofisticadas y/o préstamos antes descritos, no están cobijados por la Ley N[ú]m. 214 de 1995 conocida como Ley para Reglamentar el Negocio de lntermediación Financiera, ni por la licencia que expidiera la OCIF a JCAF Investment, Corp., así tampoco los demandados poseen una licencia válida para ello.

14. Las llamadas inversiones sofisticadas y/o préstamos antes descritos, no est[á]n cobijados por licencia que expidiera la OCIF a JCAF Investment, Corp., sino que son transacciones realizadas por el codemandado Julio C.

Arango Frías en su carácter personal, cuyos actos u omisiones culposas y/o negligentes generaron daños económicos a los demandantes, que deben ser resarcidos por los demandados solidariamente.

15. Considerándose que las transacciones objeto de este pleito están fuera del alcance de la Licencia expedida por la OCIF a JCAF Investment, Corp., el codemandado Julio C. Arango Frías y la Sociedad Legal de Gananciales compuesta con su esposa Dra. Joanne Marín Favale son solidariamente. responsables y están obligados junto a la codemandada JCAF Investment, Corp. al resarcimiento de las cantidades de dinero que han perdido los demandantes, incluyendo los intereses generados desde que se depositó el dinero hasta su final y definitivo pago.

16. Dada la actitud contumaz y temeraria de la parte demandada, ha provocado que la parte demandante no tenga otra alternativa que acudir al Tribunal a solicitar el cobro, por lo que se solicita la imposición de las costas, gastos y honorarios de abogado por una cantidad no menor de $25,000.00.

(Énfasis en el original omitido).[5]

El 5 de marzo de 2018, el señor Arango Frías y su esposa presentaron una *Contestación a demanda enmendada* en la que negaron la mayoría de las alegaciones materiales de la *Demanda enmendada*.[6] Entre sus defensas afirmativas, levantaron que JCAF Investment actuó como intermediaria financiera y que las transacciones involucraron a Arova Foods y al señor Alvarado. Asimismo, plantearon que el señor Arango Frías y la señora Marín Favale estaban casados bajo el régimen de total separación de bienes y, por lo tanto, esta última no tenía que ver con la reclamación.

El 8 de noviembre de 2021, el TPI emitió una *Sentencia enmendada* en la que, enmendó un dictamen del 14 de octubre de 2021, y declaró Ha Lugar la *Demanda enmendada*, No Ha Lugar una *Demanda contra tercero* promovida por JCAF Investment contra Arova Foods y el señor Alvarado, y, en consecuencia, ordenó a JCAF Investment y al señor Arango Frías a pagar solidariamente a Bou Maintenance Corp. $88,649.41 por concepto del remanente del

---

[5] Íd., págs. 2-4.
[6] Íd., Anejo II, págs. 6-8.

préstamo de $100,000.00.[7] También, le impuso a JCAF Investment y al señor Arango Frías la obligación de solidariamente reembolsar $150,000.00 al señor Bou Santiago. Igualmente, impuso $5,000.00 por concepto de honorarios por temeridad a favor de Arova Foods.

A juicio del foro primario, el ofrecimiento de transacciones de inversiones realizado por JCAF Investment infringió la *Ley Uniforme de Valores* (Ley Núm. 60-1963), Ley Núm. 60 de 1963, según enmendada, 10 LPRA secs. 881 *et seq.*, y, por ello, eran nulas y correspondía la devolución del dinero que la parte recurrida le entregó por concepto de inversiones. También, como el señor Arango Frías utilizó su posición como presidente de JCAF Investment para incurrir en una práctica ilegal de ofrecimiento de inversiones, resolvió descorrer el velo corporativo de la entidad y responsabilizarlo a él en su carácter personal. Por último, determinó que no procedía la reclamación en contra de Arova Foods y el señor Alvarado porque no se demostró que la parte recurrida hubiese tenido relación alguna con estos.

Luego de múltiples trámites procesales, los cuales según el peticionario incluyeron la presunta inscripción de la *Sentencia* del TPI del 8 de noviembre de 2021 en el Registro de la Propiedad, el 9 de enero de 2025, el señor Arango Frías radicó una *Moción para que se anule asiento registral* en la que solicitó una orden al Registrador de la Propiedad de Fajardo para que deje sin efecto la inscripción de una Instancia presentada al asiento 2023-141031-FA01 en la que se anotó el referido dictamen sobre la Finca 4033 del Registro de la Propiedad de Fajardo.[8] En ese momento, argumentó que, a la fecha de la presentación de la Instancia, el señor Arango Frías no tenía interés alguno en dicha propiedad, cuyos titulares registrales eran su padre y su madre. Asimismo, planteó que el dictamen no tenía

---

[7] Íd., Anejo III, págs. 9-25.
[8] Íd., Anejo IV, págs. 26-34.

que ver nada con la propiedad inmueble al punto que ni la mencionó. A su entender, la acción cubierta por la *Sentencia* era puramente personal y no debería tener cabida en el Registro de la Propiedad.

El 9 de abril de 2025, el TPI emitió la *Orden* recurrida en la que declaró No Ha Lugar la solicitud del peticionario para que se ordenara la anulación del asiento registral.[9]

El 29 de abril de 2025, el señor Arango Frías presentó una *Moción de reconsideración* en la que reiteró su solicitud de orden para anular el referido asiento registral.[10] En ella, subrayó que cuando se presentó la Instancia la propiedad constaba inscrita a favor del señor Julio Arango Verdecía (señor Arango Verdecía) y su esposa la señora Celeste Aurora Frías Frías, el padre y la madre del peticionario.

El 2 de mayo de 2025, el TPI emitió una *Orden* en la que declaró No Ha Lugar la reconsideración solicitada por el peticionario.[11]

Inconforme, el señor Arango Frías radicó la *Petición de certiorari* de epígrafe en la que solicitó que revoquemos la *Orden* recurrida y, en su lugar, ordenemos al Registro de la Propiedad cancelar el asiento de inscripción "D" de la Finca 4033 de Fajardo. En específico, le imputó al TPI la comisión del siguiente error:

> ERR[Ó] EL TRIBUNAL DE INSTANCIA AL NEGARSE A CANCELAR UNA ANOTACI[Ó]N DE SENTENCIA EN Y SOBRE UN INMUEBLE NO [R]ELACIONADO CON LA ACCI[Ó]N PERSONAL DE QUE TRATA LA SENTENCIA Y EN EL CUAL EL COMPARECIENTE NO TEN[Í]A INTER[É]S NI T[Í]TULO AL MOMENTO DE SU PRESENTACI[Ó]N

Según expuso, el 13 de noviembre de 2023, el señor Bou Santiago solicitó al Registrador de la Propiedad que anotara la *Sentencia* en el caso sobre una propiedad inmueble localizada en Fajardo, la Finca 4033, que pertenecía y estaba registrada en ese

---

[9] Íd., Anejo V, pág. 35. Notificada y archivada en autos el 15 de abril de 2025.
[10] Íd., Anejo VI, págs. 36-38.
[11] Íd., Anejo VII, pág. 39. Notificada y archivada en autos el 6 de mayo de 2025.

momento a favor de los padres del señor Arango Frías. Acto seguido, esbozó, el Registrador de la Propiedad inscribió la *Sentencia,* pese a que el peticionario no tenía algún derecho inscrito sobre dicha propiedad. A su juicio, la anotación preventiva de la *Sentencia* se excedió de lo permitido por el Artículo 44 de la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico* (Ley Núm. 210-2015), Ley Núm. 210 de 2015, según enmendada, 30 LPRA sec. 6064, porque el dictamen en cuestión no fue emitido en una acción judicial que afectara la propiedad inmueble en ningún sentido. Asimismo, denunció que se violentó el Artículo 45 de la Ley Núm. 210-2015, *supra* sec. 6065, porque la anotación no fue ordenada por un tribunal.

El 14 de julio de 2025, la parte recurrida presentó un *Memorando en oposición a la expedición del certiorari solicitud de desestimación* en la que solicitó que confirmemos la *Orden* recurrida. En esta, arguyó que la ejecución de una sentencia puede tramitarse mediante una anotación preventiva de embargo en el Registro de la Propiedad y que el inmueble no tiene que tener relación con el pleito. Alegó además, que el peticionario es copropietario del inmueble donde se anotó el embargo y que, por ende, es dicha propiedad la que responde por el pago de la sentencia emitida a favor de la parte recurrida. Sostuvo que si hubo una deficiencia en la anotación de embargo, la misma fue subsanada por el peticionario al presentar la declaratoria de herederos donde se le adjudica como copropietario del inmueble.

En adelante, pormenorizamos el derecho atinente al presente recurso.

### III.

### A.

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las

determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1,[12] establece las instancias en las que le foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp., et al.***, 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorar*i que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Contruction, Inc.***, 201 DPR 703 (2019).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

---

[12] Esta Regla dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[13]

**B.**

La Ley Núm. 210-2015, *supra* secs. 30 LPRA secs. 6001 *et seq.*, es el estatuto vigente que rige el quehacer del Registro de la Propiedad. Entre los cambios que dicho estatuto introdujo al derogar la *Ley de inscripción de sentencias que crean gravámenes sobre bienes inmuebles*, Ley Núm. 8 de marzo de 1906, según enmendada, se encontró la eliminación del Libro de Sentencias "por ser innecesario y ajeno a un registro de bienes inmuebles y de los derechos reales que los afectan". Exposición de motivos, Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210 de 8 de diciembre de 2015, 2015 LPR 210. A esto, se añadió que:

> Las sentencias constituyen gravámenes sobre las fincas por lo que se deben anotar o inscribir en el folio real cuando así lo ordena el Tribunal o cuando recaen sobre un bien inmueble o derecho inscrito. Las obligaciones personales no tienen acceso al registro por lo que las cargas deben aparecer registradas en la finca y no en abstracto. Íd.

---

[13] Esta Regla dispone lo siguiente:
El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cónsono con ello, el Título IV de la Ley Núm. 210-2015, *supra* Capítulo 304, reglamenta las anotaciones preventivas y entre ellas ubica la inscripción de sentencias. En lo relevante, el Artículo 44 de la Ley Núm. 210-2015, *supra*, enumera las siguientes personas que podrán pedir la anotación preventiva:

1) El que reclame en juicio la propiedad de bienes inmuebles o la constitución, declaración, modificación o extinción de cualquier derecho inscribible.
2) El que reclame en una acción judicial alguna circunstancia que afecte el título de propiedad inmueble, la validez y eficacia, o invalidez o ineficacia del título o títulos referentes a la adquisición, constitución, declaración, modificación o extinción de cualquier derecho inscribible.

[…]

Ahora bien, el Artículo 45 de la Ley Núm. 210-2015, *supra* sec. 6065, prescribe que, bajo los anteriores supuestos, únicamente se podrá realizar la anotación si es ordenada por el tribunal correspondiente.

Asimismo, el Artículo 46 de la Ley Núm. 210-2015, *supra* sec. 6066, preceptúa:

Cuando por sentencia firme se resuelva en sentido favorable la reclamación a que se refieren los incisos 1 y 2 del Artículo 44, el Registrador practicará los asientos de inscripción y cancelación procedentes. La orden y mandamiento judicial serán título suficiente para efectuar la inscripción que corresponda y también lo será la escritura de venta judicial en los casos de ejecución mediante subasta pública.

De esta forma, la Ley Núm. 210-2015, *supra*, parece eliminar el *gravamen por sentencia* que, al ser impuesto, permeaba sobre todos los bienes inmuebles de aquella persona contra la que se dictó sentencia. En su lugar, requiere la inscripción de la sentencia respecto a bienes inmuebles específicos de la persona mediante una orden del tribunal a esos efectos.

A manera de recuento, el *gravamen por sentencia* era un tipo de "gravamen oculto" que, contrario al requisito de especialidad de los gravámenes respecto a cada finca afectada, otorgaba el derecho a que se estableciera un embargo sobre los bienes del deudor por sentencia en exclusión de otros intereses adversos posteriores a la

sentencia. ***Santiago v. E.L.A.,*** 163 DPR 149, 163-164 (2004); ***Hernández v. Medina et al.,*** 19 DPR 88 (1913). El alcance de este tipo de gravamen era el mismo de una anotación preventiva de demanda o embargo en cuanto a créditos posteriores. Íd., pág. 164. En particular, si se inscribía una sentencia en el Registro de Sentencias, entonces constituía "un gravamen sobre todo inmueble del demandado –deudor por sentencia– no exento de embargo radicado en el distrito y sobre todos los inmuebles que el demandado adquiera posteriormente en dicho distrito". Íd., pág. 163.

## IV.

En el caso de marras, mediante la *Orden* recurrida, el TPI declaró No Ha Lugar una solicitud que promovió el señor Arango Frías para que se le ordenara al Registrador de la Propiedad anular la inscripción de una *Sentencia* dictada en el caso de epígrafe.

Para el peticionario, la instancia nunca debió ser inscrita porque el titular registral de la propiedad, la Finca 4033 de Fajardo, era el señor Arango <u>Verdecía</u>, quien no tenía relación alguna con el pleito. Asimismo, plantea que el dictamen no tuvo que ver con la ejecución de la propiedad y no incluyó una orden de embargo, requisito necesario para gravar la referida finca.

Para la parte recurrida, el inmueble sobre el cual se hace una anotación preventiva en el Registro de la Propiedad con relación a la ejecución de una sentencia no tiene que tener relación con el pleito. Asimismo, sostiene que la anotación preventiva en el Registro de la Propiedad va dirigida a la participación del peticionario en dicha propiedad, como un acto relativo a una transacción sobre los inmuebles, porque garantiza el cumplimiento de la sentencia a su favor. Con ello, argumentó que el TPI tiene la facultad para concederle el remedio de la anotación de embargo para este hacer valer su acreencia.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, en correcta práctica adjudicativa apelativa, a la luz de la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que procede expedir el auto de *certiorari* solicitado y revocar la *Orden* recurrida. Como cuestión de umbral, se conforman los criterios reglamentarios estatuidos para expedir este tipo de auto. En específico, estamos ante un proceder del TPI que es contrario a derecho y, al impugnarse mediante el presente recurso, estamos en la etapa más propicia para considerarlo.

En los méritos, el foro primario erró al rechazar emitir una *Orden* al Registrador de la Propiedad a los efectos de anular el asiento de inscripción D de la Finca 4033 de Fajardo. Según surge del expediente del caso, la *Sentencia* emitida en este caso y presentada ante el Registro de la Propiedad no ordenó su inscripción respecto a propiedad inmueble alguna del señor Arango **Frías**, mucho menos respecto a bienes inscritos a favor del señor Arango **Verdecía**. De hecho, el pleito no versaba sobre la propiedad o bienes inmuebles, ni alguna circunstancia que afectara el título de una propiedad inmueble, tal y como exigen los incisos 1 y 2 del Artículo 44 de la Ley Núm. 210-2015, *supra*. Sin todo ello, no procede que se haya inscrito el dictamen porque no se cumplió con lo exigido por el Artículo 46 de la Ley Núm. 210-2015, *supra*. Y, ante tal error, procedía que el TPI actuara de oficio y ordenara la anulación del asiento. Corresponde que el foro primario emita una *Orden* al Registrador de la Propiedad para que anule el asiento de inscripción D de la Finca 4033, a los efectos de corregir lo que no debió ser inscrito porque nunca fue ordenado.

## V.

Por los fundamentos pormenorizados, se *expide* el auto de *Certiorari* solicitado y se *revoca* la *Orden* recurrida. Se devuelve el caso al TPI para que actúe conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones